**Carl EDWARDS, Appellant,**

**v.**

**Paul McNEILL, et al., Respondents,**

**Bryan Piester, Respondent.**

**No. WD 49770.**

Missouri Court of Appeals,
Western District.

Feb. 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1995.

Larry R. Marshall, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for respondent McNeill.

Jeffrey Owen Parshall, Columbia, for respondent Piester.

Before FENNER, C.J., and KENNEDY and BERREY, JJ.

FENNER, Chief Judge.

Appellant, Carl Michael Edwards, appeals from the order of the trial court granting summary judgment in favor of respondents, Bryan Piester, Paul McNeill, Robert Ordway and Lynette Hiatte.

The record reflects that on August 10, 1987, appellant was involved in a traffic accident in Columbia, Missouri. Respondent Piester investigated the accident as a member of the Columbia Missouri Police Department. Officer Piester was advised by the Columbia Police Communications Center that appellant's driver's license appeared to have been revoked. Officer Piester placed appellant under arrest for driving while his operator's license was revoked and transported appellant to the police station and the jail where appellant posted bond and was released.

At all relevant times respondent McNeill was the Director of the Missouri Department of Revenue.[1] Respondent Ordway was the Electronic Data Processing Coordinator for the Driver's License Bureau of the Department of Revenue. Ordway informed the computer programmers of the type of information required to be maintained by the Driver's License Bureau. Respondent Hiatte wrote computer programs as an employee of the Department of Revenue.

Appellant alleges that there was a mistake in the computer program of the Missouri Department of Revenue that allowed his driver's license to reflect that it was under revocation when it was not.

At issue before the trial court was appellant's petition for damages against the respondents. The petition was in four counts with Count I alleging a claim for false arrest against Piester and McNeill. Count II sought punitive damages against Piester and McNeill on appellant's false arrest claim. Count III alleged a claim under 42 U.S.C. § 1983 (1994), against Piester and McNeill.

Counts I, II and III identified Ordway and Hiatte as employees of the Missouri Department of Revenue but did not make any claim against Ordway or Hiatte or pray for damages against either of them. Count IV alleged a claim for negligence against Ordway and Hiatte in their individual and official capacities.

Count IV alleged Ordway and Hiatte had duties to Edwards to properly assess points against his driver's license record "pursuant to Missouri statute," to properly deduct points from his driver's license record "pursuant to Missouri statute," and "to assure that all computer entries properly represented Plaintiff's driver's license record." Count IV alleged that Ordway and Hiatte knew or should have known that Edwards' driver's

---

1. Appellant states in his brief on appeal that he does not believe he has a claim against respondent McNeill and therefore he is not pursuing his appeal against McNeill.

license was not revoked, but failed to exercise care, and as a result of their negligence Edwards was falsely arrested.

Ordway and Hiatte answered the only count directed against them, Count IV, alleging that they had official immunity in their individual capacities and further that they owed no duty of care to appellant. In their official capacities they alleged sovereign immunity. Piester also alleged immunity and good faith justification. The trial court granted summary judgment in favor of respondents.

■ A movant is entitled to a summary judgment when the movant can establish that there are no genuine issues of material fact in dispute and the movant is entitled to summary judgment as a matter of law. Rule 74.04. In reviewing an order granting summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth in a moving party's motion are taken as true unless contradicted by the non-moving party's response to the motion. *Id.* Furthermore, a summary judgment must be affirmed if, as a matter of law, the judgment is sustainable on any theory. *State ex rel. Boshers v. Dotson*, 879 S.W.2d 730, 731 (Mo.App.1994).

## I.

In his first point on appeal, appellant argues that the trial court erred in granting summary judgment on behalf of Ordway and Hiatte in that they were not entitled to immunity because the acts they performed were ministerial in nature. Appellant alleged a cause of action against Ordway and Hiatte in both their individual and official capacities.

### INDIVIDUAL CAPACITY

■ Public officers acting within the scope of their authority are not individually liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity. *Kanagawa v. State*

*by and through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985). Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required. *Id.* It has been said that a discretionary act requires "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979)).

A ministerial function, in contrast, is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Rustici*, 673 S.W.2d at 769 (quoting *Yelton v. Becker*, 248 S.W.2d 86, 89 (Mo.App.1952)). "While the above definitions provide useful guidelines, in the final analysis the decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Kanagawa*, 685 S.W.2d at 836.

The record reflects that Hiatte wrote a computer program designed to remove information from driver's license records of all of Missouri's drivers. Hiatte received directions for her program from various members of the Driver's License Bureau including Ordway. Hiatte's program was to purge from non-suspended and non-revoked driver's license records the variable portions of the record called "trailers" which were more than five years old and not related to driving while intoxicated or breath-alcohol content convictions.

On December 3, 1978, Edwards' driver's license was revoked for accumulating twelve points within one year. On December 14, 1978, Edwards was granted a limited driving privilege. On August 21, 1979, Edwards was convicted of driving without an operator's license and his limited driving privilege was

terminated. On October 9, 1979, Edwards' driver's license was again revoked for accumulating twelve points within one year. On December 3, 1979, Edwards appealed the October 9, 1979, revocation. On December 28, 1979, the revocation of December 3, 1978, was set aside and Edwards' license was reinstated.

The purge, as directed by Hiatte's program, was conducted on August 30, 1986. The purge was conducted from the oldest to most recent trailer and from "reinstatement to reinstatement," that is, all eligible trailers within a reinstatement group were to be purged.

The purge erroneously removed from Edwards' driver's license record the December 28, 1979, reinstatement for the December 3, 1978 revocation, but not the revocation itself. The December 29, 1979 reinstatement for the December 3, 1978 revocation was erroneously removed because an August 21, 1979 reinstatement for limited driving privileges intervened between the revocation and its reinstatement, and the program purged only the trailers in the reinstatement group. The status code on Edwards' driver's license record was changed as a result of the purge from clear to revoked.

The error in the computer program was corrected sometime between October of 1986 and January of 1987. The error was that the program removed eligible trailers from reinstatement to reinstatement as they occurred from oldest to newest without first placing the eligible trailers in a reinstatement group on hold and checking to determine if any newer trailers were related to those trailers in the group.

■ In the case at bar, the record reflects that the acts of Hiatte and Ordway in deciding what information needed to be purged and how that would be accomplished by computer program required reason, judgment, and professional expertise in carrying out the task. Furthermore, once the error was discovered, reason and judgment were necessary to determine how the error should be corrected.

The trial court did not err in granting summary judgment in favor of Ordway and Hiatte in regard to appellant's allegations of individual liability.

## OFFICIAL CAPACITY

■ When a cause of action is stated against a state official in his official capacity, the action is one against the state. *Gas Serv. Co. v. Morris*, 353 S.W.2d 645, 647–48 (Mo. 1962). Because official-capacity suits are one method of pleading an action against an entity, the United States Supreme Court has held that a suit seeking damages from a state official in his or her official capacity should be treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Phrases such as "acting in their official capacities" are references to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury. *Hafer*, 112 S.Ct. at 362. Therefore, the immunities available to the defendant in an official capacity action seeking damages are those the governmental entity enjoys. *Id.*

■ The State of Missouri enjoys sovereign immunity as existed at common law except for tort claims arising from the negligent operation of motor vehicles by public employees and from the dangerous condition of a public entity's property if and to the extent that the public entity has acquired liability insurance. *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985).

The exceptions to sovereign immunity are not applicable in the case at bar. In their official capacity, Hiatte and Ordway are protected by sovereign immunity from Edwards' allegations of negligence.

Edwards' first point on appeal is denied.

## II.

■ In his second point, Edwards argues that the trial court erred in granting summary judgment to Hiatte and Ordway because they owed a statutory duty to him in regard to maintaining his driving record. Edwards argues that a statutory duty arises

under § 302.302, RSMo Supp.1993, and § 302.306.[2]

Section 302.302 provides, in pertinent part, as follows:

The director of revenue shall put into effect a point system for the suspension and revocation of chauffeurs' and operators' licenses. Points shall be assessed only after a conviction or forfeiture of collateral....[3]

Edwards argues that in addition to § 302.302, that § 302.306 supports his second point because § 302.306 mandates a reduction in total accumulated point value by one-third for the first full year of operation without conviction for a moving violation, a reduction by one-half for the second consecutive full year, and the withdrawal of the remaining accumulated point value for the third consecutive full year. Edwards argues that these duties are ministerial and because he had no points assessed against his driving record since February 4, 1984, all points against his record should have been withdrawn by the date of his arrest on August 10, 1987.

These statutes do not support Edwards' argument against Hiatte and Ordway. These statutes simply require the Director of the Department of Revenue to put into effect a point system and to revoke drivers' licenses and driving privileges. They do not specify a particular official who is to assess or deduct points from a driving record or a particular official to terminate revocation periods.

There is nothing in the record to establish that Ordway and Hiatte assess or deduct points or terminate revocation periods. Ordway is the Electronic Data Processing Coordinator for the Department's Driver's License Bureau. Ordway informs the Department's computer programmers what information is required to be maintained by the Bureau. Hiatte is a computer programmer who writes computer programs.

Furthermore, the record establishes that points were deducted from Edwards' driving record as required. Edwards was arrested not because points were not deducted from his driving record or his revocation period was not terminated, but because the August 30, 1986 computer purge erroneously removed his reinstatement.

Edwards' second point is denied.

## III.

In his third point, Edwards argues that the trial court erred in sustaining the motion for summary judgment of respondent Piester because Piester did not possess the necessary reasonable belief to cloak him with qualified immunity.

The arrest of an innocent person by an officer empowered to make an arrest is justified if the officer has a reasonable belief that the person is guilty of the offense for which he is arrested. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984). Justification is a complete defense to a cause of action for false arrest. *Id.* at 767.

The undisputed facts show that Officer Piester was investigating a traffic accident as part of his official duties as a police officer for Columbia, Missouri. Officer Piester checked the driver's licenses of the drivers involved in the accident at the scene of the accident and he was advised by the police communications center that the computer reflected that appellant's license had a "possible revocation." By way of explanation, the record reflects that an actual revocation is always identified by computer information provided from the Department of Revenue as a "possible revocation." In other words, when an operator's license is revoked, the revocation is identified as "possible revocation." Therefore, when an officer receives information of a "possible revocation," the officer's belief that the license is revoked is reasonable by virtue of the identifying words

2. All statutory references are to RSMo Supp. 1993 unless otherwise specifically stated.

3. Further, in regard to the point system, section 302.304, RSMo Supp.1993 provides, in pertinent part, that "[t]he director shall revoke the driver's license and driving privileges of any person" upon the accumulation of certain numbers of points in certain monthly periods, and "[t]he revocation period of any person whose license and driving privileges has been revoked" and who has filed proof of financial responsibility and is otherwise qualified "shall be terminated" by notice after one year from the date of revocation. Section 302.304.6, RSMo Supp.1993.

**684**

used by the Department of Revenue. Furthermore, even though incorrect because of the computer error, at the time of his arrest, appellant's driving record actually reflected that his license had been revoked.

Appellant advised Officer Piester that he believed the revocation to be a mistake and Officer Piester checked the computer information again after he and appellant arrived at the police station. Once again, the computer reflected that appellant's license had a "possible revocation."

The undisputed material facts establish that as a result of the computer information, provided to and checked by Officer Piester, that Officer Piester had a reasonable belief that appellant had committed the offense of driving while revoked. Officer Piester was entitled to summary judgment as a matter of law.

Appellant's third point is denied.

## IV.

In his fourth and final point, appellant argues that the trial court erred in granting judgment in favor of respondents Ordway and Hiatte in regard to his § 1983 claim.

A pleading that does not set forth a plain and short statement of facts showing that the pleader is entitled to relief does not state a claim. *Y.G. v. Jewish Hosp. of St. Louis,* 795 S.W.2d 488, 494 (Mo.App.1990).

Appellant's § 1983 claim was contained within Count III of his petition. Count III identified Ordway and Hiatte as employees of the Department of Revenue but contained no substantive complaint against them. Furthermore, reflective of appellant's lack of substantive complaint against Ordway and Hiatte, the prayer for judgment and damages under Count III was against only Piester and McNeill.

The trial court did not err by entering judgment in favor of Ordway and Hiatte on Count III of appellant's petition.

The judgment of the trial court is affirmed.

All concur.