Tracey BLUE, Appellant–Respondent,

v.

HARRAH'S NORTH KANSAS CITY, LLC, Respondent–Appellant,

B.L. Sweiger, Respondent.

Nos. WD 63948, WD 63975.

Missouri Court of Appeals, Western District.

June 7, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 2005.

Application for Transfer Denied Sept. 20, 2005.

George S. Miller, Maryville, MO, for appellant-respondent.

Joseph M. Fridkin, Kansas City, MO, for respondent-appellant.

Theodore A. Bruce, Jefferson City, MO, for respondent.

Before THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN and PATRICIA A. BRECKENRIDGE, JJ.

THOMAS H. NEWTON, Judge.

Mr. Tracey Blue was arrested at Harrah's Casino for the theft of some roulette gaming chips. Mr. Blue brought suit for false arrest against Harrah's and against

Officer B.L. Sweiger, the Missouri Gaming Commission (MCG) agent who was on duty that night and actually arrested him. Officer Sweiger was granted summary judgment and dismissed from the case. Harrah's was found liable for the false arrest. The jury did not award Mr. Blue any actual damages but did award him punitive damages. The trial court granted Harrah's a judgment notwithstanding the verdict on the punitive damages award. Both Mr. Blue and Harrah's appealed.

Mr. Blue did present a submissible case for Harrah's liability, so the trial court correctly denied Harrah's motion for judgment notwithstanding the verdict on the question of liability. The trial court correctly denied Mr. Blue's request for a new trial based on the inconsistent verdict because he waived that issue. The trial court correctly denied Mr. Blue's motion to amend the judgment to award him nominal damages because he did not request the nominal damages before the jury was dismissed. The trial court correctly granted Harrah's motion notwithstanding the verdict on the punitive damages award because Mr. Blue failed to show by clear and convincing evidence that Harrah's had an evil motive or acted with reckless indifference to his rights. The trial court incorrectly granted Officer Sweiger's motion for summary judgment because it is a jury question whether he had probable cause and, although he is entitled to official immunity, it is a jury question whether he lost that immunity by acting in bad faith or with malice. Affirmed in part, reversed and remanded in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Blue, an African–American, arrived at Harrah's at about 3:00 a.m. on April 1, 2003, with a friend from work, Mr. Darren Houcks. Mr. Blue was wearing a solid navy pullover sweatshirt and gold pants. He got a gaming card once he arrived at Harrah's. He initially played slots. Then he and Mr. Houcks played at the craps tables. Mr. Houcks left at some point and went back to playing slots. Mr. Blue played craps for a little while longer and then went to where Mr. Houcks was playing slots and played slots until he ran out of money. He then sat in front of the escalators, which were near both the craps and roulette tables, waiting for Mr. Houcks to finish playing and cash out.

During that time, another patron reported that her chips, worth $85–$90, were stolen when she temporarily left them at the roulette table. Harrah's surveillance personnel reviewed the tapes and after confirming that the theft did occur, Mr. Eric Jarvis, the senior surveillance officer that morning, contacted the MGC agent on duty, Officer B.L. Sweiger.[1] Officer Sweiger went to the surveillance department and reviewed the videotape of the theft. The tape was in black and white and did not show the thief's face, but Officer Sweiger and Mr. Jarvis could tell that he was an African–American male and that his clothing had a contrasting collar.

While they were reviewing the videotape in another room, Ms. Karen Crabtree, another surveillance department employee, was scanning the casino looking for anyone who might fit the minimal description of the thief. She noticed Mr. Blue sitting by the escalators and called Officer Sweiger and Mr. Jarvis into the main room to see if he looked like the thief. While they were looking at him, Mr. Blue got up and headed toward the exit with Mr. Houcks. Officer Sweiger decided that Mr. Blue looked enough like the suspect that he wanted to

1. Officer Sweiger is a Missouri State Highway Patrol Trooper with the gaming division of the Highway Patrol; he is assigned to Harrah's.

talk to him before he left. So he asked the surveillance department to call the security department and have them stop Mr. Blue before he left. Mr. Jarvis did not think that Mr. Blue looked like the thief because his collar did not match the one shown in the videotape. Mr. Jarvis testified that he told Officer Sweiger of his doubts, but Officer Sweiger did not recall that statement. Officer Sweiger admitted that he did not have sufficient information to arrest Mr. Blue when he left the surveillance office.

Mr. Blue and Mr. Houcks were stopped at the turnstile exit, as instructed by Officer Sweiger. They were told that the gaming officer wanted to speak with them. While there, Ms. Kathy Martin, the security supervisor on duty, talked with Mr. Blue and asked for his identification. After several minutes, Officer Sweiger arrived. He tried to talk with Mr. Blue but Mr. Houcks kept interrupting, so he took Mr. Blue off to the side to talk with him and no one else heard their exchange. Officer Sweiger told Mr. Blue that he was seen stealing chips at the roulette table. Mr. Blue replied that he never played roulette, did not know how to play roulette, and was at the craps table and slot machines all night. Officer Sweiger believed that Mr. Blue was being evasive when he claimed that he did not know how to play roulette. Mr. Blue also asked to see the tapes but was refused. At some point in the conversation, Officer Sweiger decided that he would get no further in questioning and he arrested Mr. Blue. He used a pair of handcuffs provided by a Harrah's employee. He then walked Mr. Blue through the casino to the MGC office. On the way he stopped near the roulette table and Ms. Martin asked the dealer whether Mr. Blue was the thief; the dealer said that he was. Once in the office, Officer Sweiger removed the handcuffs, issued Mr. Blue a citation, and Mr. Blue

was released. Ms. Martin told him that he was banned from the casino until this was resolved.

During the day the tapes were reviewed more thoroughly and Mr. Blue was seen at the craps table during the time of the theft. The surveillance department determined that someone else had stolen the chips and the thief was seen leaving before the theft was reported. Officer Sweiger sent Mr. Blue a letter informing him of the mistake and letting him know that the summons had been dismissed.

Mr. Blue brought a claim for false arrest against Harrah's and Officer Sweiger. There was no dispute that he was falsely arrested; the dispute was over who was liable for that false arrest. He asserted that Officer Sweiger was acting as an employee or agent of Harrah's and that Harrah's and Officer Sweiger were acting in concert when Mr. Blue was falsely arrested. Officer Sweiger moved for summary judgment, claiming that he had probable cause to arrest Mr. Blue and that he was entitled to official immunity for the arrest. The trial court granted Officer Sweiger's motion for summary judgment. A trial was had on Mr. Blue's claim against Harrah's. During trial, Harrah's moved for a directed verdict claiming that Mr. Blue failed to show an agency relationship between Harrah's and Officer Sweiger and that Harrah's engaged in any independent acts that would give rise to liability. The jury found in favor of Mr. Blue but did not award him any actual damages. It awarded him $250,000 in punitive damages.

After the jury was dismissed, Mr. Blue moved the court to amend the judgment by entering nominal damages to support the punitive damages award or, in the alternative, to grant him a new trial because the verdict was against the weight of the evidence. Harrah's filed a motion for

judgment notwithstanding the verdict on both the liability finding and the punitive damages award. The trial court granted Harrah's motion on the punitive damages award, but denied all other motions by both parties. Mr. Blue and Harrah's appeal.

Mr. Blue brings three points on appeal. He first claims that the trial court erred in not amending the judgment to include nominal damages. He next claims that the trial court erred in not granting him a new trial as an alternative to amending the judgment. And he finally claims that the trial court erred in granting Officer Sweiger's motion for summary judgment. Harrah's brings one point on cross-appeal, claiming that the trial court erred in denying its motion for directed verdict and for judgment notwithstanding the verdict on liability.

## II. LEGAL ANALYSIS

This case involves liability for a false arrest. There is no dispute that Mr. Blue was not the thief and should not have been arrested. The only dispute is who, if anyone, is liable for any harm from that false arrest and, if someone is liable, to what damages Mr. Blue is entitled. A plaintiff has a cause of action for false arrest if the plaintiff is confined, without legal justification. *Rankin v. Venator Group Retail, Inc.,* 93 S.W.3d 814, 819 (Mo.App. E.D.2002). So there are only two elements: restraint of the plaintiff against his will, and the unlawfulness of that restraint. *Bramon v. U–Haul, Inc.,* 945 S.W.2d 676, 680 (Mo.App. E.D.1997). And a defendant may be liable for false arrest even if he did not actually confine the plaintiff, if that defendant instigated, caused, or procured the arrest. *Id.* Merely providing information to the police is insufficient to find that the defendant caused the arrest. *Id.*

## A. Harrah's Cross–Appeal—The Trial Court Correctly Denied the Motion for Directed Verdict and for Judgment Notwithstanding the Verdict on Liability.

We address Harrah's cross-appeal first because if we had found in Harrah's favor, we would not need to consider Mr. Blue's first two points. The question under this point is whether Harrah's could be found liable for Mr. Blue's arrest.

The standard of review for a decision on a motion for a directed verdict or a judgment notwithstanding the verdict is the same. *First State Bank v. Frankel,* 86 S.W.3d 161, 169 (Mo.App. E.D.2002). The defendant is entitled to have the motion granted only if the plaintiff fails to make a submissible case. *Porter v. Toys "R" Us—Del., Inc.,* 152 S.W.3d 310, 315 (Mo. App.W.D.2004). "To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Id.* (internal quotation marks and citations omitted). When deciding whether the plaintiff made a submissible case, we view the evidence and all reasonable inferences from it in the light most favorable to the plaintiff and disregard all evidence to the contrary. *Brockman v. Regency Fin. Corp.,* 124 S.W.3d 43, 46 (Mo.App. W.D.2004).

Granting a judgment notwithstanding the verdict is drastic, and we will not overturn a jury's verdict unless there are no probative facts to support it. *Porter,* 152 S.W.3d at 316. There is, in fact, a presumption in favor of reversing a judgment notwithstanding the verdict. *Brockman,* 124 S.W.3d at 46.

Harrah's presents several reasons that it is not liable. It first claims

that because Officer Sweiger was granted summary judgment, it cannot be held liable for his actions. Because we are reversing on that issue,[2] that would not provide Harrah's protection from liability. Further, we do not know why the trial court granted his motion for summary judgment. Because there was no probable cause for arrest, we have to assume that it was based on official immunity. But an officer's immunity does not extend to an individual who gives the officer information about a crime and encourages and requests the officer to arrest an innocent party. *Winegar v. Chicago, B. & Q. R.R. Co.*, 163 S.W.2d 357, 365 (Mo.App.1942). So whether Officer Sweiger is liable is irrelevant to Harrah's liability.

Harrah's claims that it cannot be liable for bringing the theft of the chips to Officer Sweiger's attention and for then following his directions. It claims that under Missouri Regulations 11 CSR 45–10.030, it was required to notify the MGC agent on the property and to follow his directions.

> In the event that a licensee or employees of the licensee knows or should have known that an illegal or violent act has been committed on or about the licensed premises, they shall immediately report the occurrence to law enforcement authorities and shall cooperate with law enforcement authorities and agents of the commission during the course of any investigation into an occurrence.

11 CSR 45–10.030(3). Harrah's claims that all that it did was report the theft to Officer Sweiger, the MGC agent on duty, once the surveillance department confirmed that the theft actually occurred. After that, Harrah's was simply "cooperat[ing] with ... [the] agent[ ] of the commission during the course of any investigation" by stopping Mr. Blue on Officer Sweiger's orders and providing handcuffs when Officer Sweiger requested them. As such, Harrah's asserts that it cannot be held liable for following the law. Further, if it did not follow these regulations, then it would lose its gaming license.[3]

 Because Harrah's did not actually arrest Mr. Blue, Officer Sweiger did, the real question is whether or not Harrah's employees' actions constitute instigation of the arrest. Providing information that forms the basis of a false arrest may make one liable for instigating the arrest. *Rankin*, 93 S.W.3d at 819. But when a person merely states facts to an officer, while leaving it to the officer to act as he sees fit, that person is not liable for false arrest. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984). Further, "a person may not be held liable for stating the truth to one who ultimately effects another's arrest." *Id.* The truth justifies and is a complete defense to the cause of action. *Id.*

Since this is a question of denial of a motion for judgment notwithstanding the verdict, we are only concerned with whether Mr. Blue made a submissible case that Harrah's instigated his arrest. We do not actually weigh the evidence that he presented. He presented evidence that Harrah's told Officer Sweiger about the theft, showed him the videotape of the theft that was readily available, and searched for anyone who resembled the thief. Harrah's employees then followed Officer Sweiger's

---

**2.** See subsection E, *infra*.

**3.** Mr. Blue claims that Officer Sweiger is basically Harrah's employee because although Officer Sweiger is a Missouri Highway Trooper and is paid by the State of Missouri, Harrah's must reimburse Missouri for his salary and benefits because he is stationed in the casino. Further, Harrah's provides all of his equipment and office space. But this is required under the MGC regulations, so it is not enough to create liability in Harrah's.

directions, which ultimately resulted in Mr. Blue's arrest. Security Supervisor Ms. Martin then became involved. But there is also evidence that Mr. Jarvis tried to dissuade Officer Sweiger from arresting Mr. Blue because he did not believe that Mr. Blue looked like the thief. And it was Harrah's employees who continued to review the tapes and confirmed that Mr. Blue did not commit the theft.

Although some of this evidence is in Harrah's favor, some of it is not. This creates two possible interpretations about what happened; so a submissible case was made, and it was for the jury to decide whom to believe. *Altenhofen v. Fabricor, Inc.*, 81 S.W.3d 578, 584 (Mo.App. W.D. 2002) ("The jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony."); *see also Frank v. Wabash R.R. Co.*, 295 S.W.2d 16, 22 (Mo.1956) (plaintiff has the burden of proof to show that the unlawful arrest occurred, then defendant has the burden to present evidence to show a justification; if this is shown, the question of whether the arrest was justified is for the jury); *Hunt v. Ruterbusch*, 38 S.W.2d 503, 504 (Mo.App.1931) (there was sufficient proof of instigation to require submission of the case to the jury, which could decide whom to believe). The jury obviously found that there was sufficient evidence of Harrah's liability. Harrah's cross-appeal is denied.

**B. Mr. Blue's Second Point—The Trial Court Correctly Denied his Motion for a New Trial.**

■ We address this point next because it is easily dismissed. The law is very clear that Mr. Blue missed his opportunity to have the verdict corrected by the jury and is not now entitled to a new trial.

■ The trial court has broad discretion in deciding whether to grant a new trial. *Moses v. Halstead*, 144 S.W.3d 309, 311 (Mo.App. W.D.2004). When reviewing denial of a new trial, we consider only the evidence that supports the trial court's decision, and the denial is conclusive unless the verdict is shockingly inadequate. *Id.*

■ Mr. Blue claims that he should have been granted a new trial because the verdict was inconsistent and against the weight of the evidence since the jury found in his favor and awarded him punitive damages but failed to award him actual damages. He claims that if the trial court will not amend the judgment[4] then he should get a new trial. By awarding him punitive damages but not actual damages, the jury returned an inconsistent verdict. *O'Brien v. Mobil Oil Corp.*, 749 S.W.2d 457, 458 (Mo.App. E.D.1988). The general rule is that no punitive damages can be awarded without an award of actual or nominal damages. *Williams v. Williams*, 99 S.W.3d 552, 556 (Mo.App. W.D.2003). And since 1986, the rule in Missouri is that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged or that claim is waived. *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986).

It does not matter that Mr. Blue got a judgment in his favor, and it does not matter that he received punitive damages. It also does not matter that he believes that this problem could be resolved by giving him an award of nominal damages, which will be considered below. The only basis for a new trial is that a verdict in his favor without an award of actual damages is an inconsistent verdict. Once that inconsistent verdict was given, the burden

4. See subsection C, *infra.*

was on Mr. Blue to ask the court to instruct the jury to award him nominal damages if it did not find that he suffered actual damages, and he failed to do so. *Jacobs v. Bonser*, 46 S.W.3d 41, 47 (Mo. App. E.D.2001). The law is very clear that Mr. Blue's failure to raise that problem before the jury was discharged means that he has waived that claim and is not entitled to a new trial. *See e.g., Ivy v. Wal–Mart Stores, Inc.*, 777 S.W.2d 682, 684 (Mo.App. W.D.1989) (the verdict should not have been accepted because the jury found in plaintiff's favor on her false imprisonment claim but did not award her actual damages; but under *Douglass* her failure to complain about this inconsistency before the jury was discharged resulted in waiver of that claim); *O'Brien*, 749 S.W.2d at 458 (verdict in false arrest case was inconsistent because it found for plaintiff and awarded him punitive damages but no actual damages; plaintiff's failure to ask that the jury resolve that inconsistency before being discharged resulted in his claim of inconsistency being waived). Mr. Blue's second point is denied.

## C. Mr. Blue's First Point—The Trial Court Correctly Refused to Enter a Nominal Damages Award.

■ Mr. Blue claims that the trial court should be able to amend the judgment, by post-trial motion, to include an award of nominal damages. If he is given nominal damages, then the punitive damages award would be supported and Harrah's would no longer be entitled to a judgment notwithstanding the verdict. *See Williams*, 99 S.W.3d at 556 n. 1 (nominal damages can support an award of punitive damages in actions for false imprisonment).

■ Under Rule 75.01,[5] the trial court retains control over judgments for thirty days after the entry of the judgment. Rule 75.01; *Scott v. Scott*, 147 S.W.3d 887, 892 (Mo.App. W.D.2004). After giving the parties an opportunity to be heard, the court may amend the judgment for good cause. *Id.* Good cause is interpreted liberally, and we review the determination of good cause for an abuse of discretion. *Stroup v. Leipard*, 981 S.W.2d 600, 603 (Mo.App. W.D.1998).

Harrah's argues two things. First, because Mr. Blue failed to even instruct the jury on nominal damages, he is not entitled to now ask that they be awarded. Second, the trial court cannot now give him an award of nominal damages that was not given by the jury.

■ We do have one case which holds that, although nominal damages are appropriate for a particular cause of action, we cannot reverse the trial court for failing to award them when the plaintiff did not request any jury instructions on nominal damages. *Clark v. Beverly Enters.-Mo., Inc.*, 872 S.W.2d 522, 527 (Mo.App. W.D. 1994). But *Clark* is so factually different because the defendant won that it does not apply to this case. So we focus only on Harrah's second argument.

■ False arrest only has two elements: restraint of the plaintiff against his will, and the unlawfulness of that restraint. *Bramon*, 945 S.W.2d at 680. A plaintiff is not required to show actual damages. *Ivy*, 777 S.W.2d at 684. As Mr. Blue asserts, "[g]eneral damages follow as a matter of course from the mere showing of wrongful arrest and imprisonment," and Mr. Blue was entitled to an award of at least nominal damages once the jury found in his favor. *Id.* So the fact that Mr. Blue did not show actual damages does not itself prevent him from getting nominal damages and does not prevent those nominal

---

**5.** Unless otherwise indicated, all rules refer to Missouri Court Rules (2004).

damages from supporting a punitive damages claim. *Cf. Williams,* 99 S.W.3d at 556 (finding of only nominal damages is not sufficient to support punitive damages because actual damages are a necessary element of a fraudulent misrepresentation claim). Nominal damages "vindicate an invasion of right that otherwise would go without redress," *Simpkins v. Ryder Freight Sys., Inc.,* 855 S.W.2d 416, 422 (Mo.App. W.D.1993), such as a false arrest where there are no actual damages.

Mr. Blue is claiming that because damages follow as a matter of course from the jury's finding that he was falsely arrested, *Ivy,* 777 S.W.2d at 684, the trial court may amend the judgment and give him an award of nominal damages.

We disagree. Although the jury found in Mr. Blue's favor on his false arrest claim, it did not award him any damages. At that point, it became his responsibility to ask for that inconsistency to be resolved by having the jury award him nominal damages. And because this case also involves the award of punitive damages, it became important for Mr. Blue to have the jury fix this problem. Because as soon as the jury awarded Mr. Blue punitive, but not actual or nominal damages, Harrah's was entitled to a judgment as a matter of law. *Jacobs,* 46 S.W.3d at 47. And by failing to resolve this problem, Mr. Blue waived his right to assert on appeal that the judge should have instructed the jury on nominal damages. *Id.*

In fact, the eastern district considered this exact question in *Jacobs* and decided it against Mr. Blue's argument. *Id.* at 47–48. In *Jacobs,* the court considered a finding in the plaintiff's favor on a claim of battery where the jury awarded him no actual damages but did award punitive damages. *Id.* at 45. The eastern district held that the trial court should have entered a judgment notwithstanding the ver-

dict for the defendant. *Id.* The court held that by failing to ask the court to correct the inconsistency due to the damages verdict before the jury was discharged, plaintiff waived his right to assert on appeal that the judge should have instructed the jury on nominal damages. *Id.* at 47. The court considered a federal case, *Wright v. Jasper's Italian Rest., Inc.,* 672 F.Supp. 424 (W.D.Mo.1987), that faced the same question. *Id.* at 47–48.

In *Wright,* the jury found that plaintiff was falsely arrested but did not award him actual damages, only punitive damages. 672 F.Supp. at 425. The *Wright* court held that it could enter an award of nominal damages to support the punitive damages because the jury found that plaintiff was wronged. *Id.* at 426. It relied on a Missouri Supreme Court case, *Herberholt v. dePaul Cmty. Health Ctr.,* 625 S.W.2d 617 (Mo. banc 1981), where the jury had awarded actual damages for which there was no proof and the Supreme Court set the award aside and directed that one dollar ($1) in nominal damages be awarded, which would then support the punitive damages award. *Wright,* 672 F.Supp. at 426 (citing *Herberholt,* 625 S.W.2d at 623–24). The *Jacobs* court held that the facts of *Herberholt* did not apply to *Wright* or its case and "[m]ore importantly," the jury in *Herberholt* actually awarded actual damages while the jury did not in *Wright* or *Jacobs.* 46 S.W.3d at 47.

> We find that vacating an award of actual damages because they are unsupported by the evidence and directing an award of nominal damages instead because a statute was actually violated by an employer [as in *Herberholt*], is a very different action from directing an award of nominal damages when no actual damages were found at all by a jury.

*Id.* at 47–48. As such, the plaintiff in that case could not have the trial court amend

the judgment to give him nominal damages after the jury was dismissed. *Id.* at 47.

 This rule is directly on point to our case and is dispositive of the issue. When a plaintiff brings a cause of action, and it is one of the few claims that does not require proof of actual damages, it is still the plaintiff's responsibility to ask for an award of nominal damages.[6] This is true even when the jury finds in the plaintiff's favor. If the jury fails to award nominal damages, the plaintiff must ask that the jury be instructed on nominal damages at that time, and the jury must then decide whether or not to award them before it is dismissed. Only then will any award of punitive damages be allowed to stand. Mr. Blue's first point is denied.

**D. Harrah's Third Response to Mr. Blue's Claims—Mr. Blue did not make a Submissible Case for Punitive Damages.**

 Harrah's claims that we could also affirm the trial court's grant of a judgment notwithstanding the verdict because Mr. Blue did not make a submissible case for punitive damages. Punitive damages are appropriate only when the defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others. *Jacobs,* 46 S.W.3d at 45. It is not the commission of the tort that matters, but the conduct or motive that provides the basis for punitive damages. *Fabricor, Inc. v. E.I. DuPont De Nemours & Co.,* 24 S.W.3d 82, 97 (Mo.App. W.D. 2000). Punitive damages are extraordinary and harsh, and so the evil motive or reckless indifference must be proven by clear and convincing evidence. *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 111 (Mo. banc 1996). Although we found

that the trial court could not amend the judgment after the jury had been dismissed, there is another reason to support the trial court's grant of Harrah's motion for a judgment notwithstanding the verdict.

Harrah's claims that neither an evil motive nor reckless indifference can be shown because it simply provided Officer Sweiger with information about a theft and followed its duties under 11 CSR 45–10.030(3) by cooperating with his investigation. Harrah's claims that all of the acts after Officer Sweiger was informed of the theft were his own actions, so Harrah's should not be held responsible for them and it certainly cannot be accused of having an evil motive or acting indifferently to Mr. Blue's rights.

Mr. Blue counters by pointing to various actions by Harrah's employees, such as Ms. Martin asking for Mr. Blue's identification, the roulette dealer identifying him as the thief, and Ms. Martin telling Mr. Blue that he was banned from the casino. But he also mentions the fact that the arrest happened even after Mr. Jarvis told Officer Sweiger that he did not believe Mr. Blue was the thief. And he focuses on other actions that were solely in Officer Sweiger's discretion, such as choosing to not interview Mr. Houcks or look at other videotapes even after Mr. Blue asserted that he was playing craps.

Although the jury found that Mr. Blue was entitled to punitive damages, we find that there is not clear and convincing evidence that Harrah's had an evil motive or a reckless indifference to Mr. Blue's rights. It was required to comply with Officer Sweiger under 11 CSR 45–10.030(3) and that is what it did. Although

---

**6.** In the majority of cases, proof of actual damages is an element of the cause of action; so this question will not arise because if the plaintiff fails to prove damages, then he or she will have lost the case.

Mr. Blue was able to present a submissible case on liability, he simply did not meet the high standard for an award of punitive damages. So the trial court's judgment notwithstanding the verdict on the award of punitive damages is affirmed.

### E. Mr. Blue's Third Point—The Trial Court Erred in Granting Officer Sweiger's Motion for Summary Judgment.

The trial court shall enter summary judgment only if "the motion, the response, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). The appellate court reviews the grant of summary judgment essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the non-movant is given the benefit of all reasonable inferences from the record. *Id.*

The moving party's entitlement to judgment as a matter of law revolves to a great extent around whether that party is the claimant or the defending party. *Id.* at 381. The claimant is the party "seeking to recover," and the defending party is the party "against whom a claim ... is asserted." Rule 74.04(a) & (b). Officer Sweiger is the defending party. As the defending party, Officer Sweiger is not required to controvert each element of Mr. Blue's claim to establish his right to summary judgment. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Instead, Officer Sweiger can establish his right to judgment by showing (1) facts that negate any one of Mr. Blue's elements; (2) that Mr. Blue, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of his elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support Officer Sweiger's properly-pled affirmative defense. *Id.* Officer Sweiger relied on the first and third methods by negating an element of false arrest and by asserting the affirmative defense of official immunity.

To prevent summary judgment, Mr. Blue needed to show that there is a genuine dispute as to the facts underlying Officer Sweiger's right to judgment on either ground. *See id.* If the parties disagree on the legal effect and consequences of the facts, and not the relevant facts themselves, there is not a genuine dispute of facts precluding summary judgment. *Betts–Lucas v. Hartmann,* 87 S.W.3d 310, 322 (Mo.App. W.D.2002).

We will affirm a grant of summary judgment if the decision is correct "under any theory supported by the record developed below and presented on appeal." *Victory Hills Ltd. P'ship I v. NationsBank, N.A.,* 28 S.W.3d 322, 327 (Mo.App. W.D.2000). "If the trial court's judgment does not specify the basis upon which summary judgment was granted, we will uphold the decision if it was appropriate under any theory." *Horneyer v. City of Springfield,* 98 S.W.3d 637, 639 (Mo.App. S.D.2003).

We do not know whether the trial court granted Officer Sweiger's motion for summary judgment based on official immunity or because he had probable cause to arrest Mr. Blue. We need find that only one of these bases supports summary judgment to affirm the trial court. *Id.* Although Mr. Blue tries to argue that Officer Sweiger did not assert either of these in his answer and so they are waived, both were pleaded

as defenses in his answer.[7]

 Police officers are not liable for negligent acts that are related to discretionary functions. *Miller v. Smith*, 921 S.W.2d 39, 45 (Mo.App. W.D.1996). "A discretionary act is one that requires 'the exercise of reason in the adapt[at]ion of means to an end and discretion in determining how or whether an act should be done or a course pursued.'" *Id.* (internal citation omitted). This doctrine was established to protect officers from second-guessing based on hindsight. *Costello v. City of Ellisville*, 921 S.W.2d 134, 136 (Mo. App. E.D.1996). Deciding whether or not to arrest someone is a matter of discretion—the officer must decide what course should be pursued based on the circumstances at hand. "A police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 757 (8th Cir.2001). The issue in false arrest is not the official capacity of the person making the arrest, but whether there was lawful authority for making the arrest. *Sturgeon v. Holtan*, 486 S.W.2d 209, 211 (Mo.1972). But official immunity does not apply to discretionary acts done in bad faith or with malice. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986).

 Because arresting someone is a discretionary act, the issue here is whether Officer Sweiger acted in bad faith or with malice, removing the protection of official immunity. Bad faith or malice generally requires actual intent to cause

injury. *Davis v. Bd. of Educ.*, 963 S.W.2d 679, 689 (Mo.App. E.D.1998).

A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others....

Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Adolf*, 706 S.W.2d at 447 (internal quotation marks and citations omitted). The official immunity defense can also be overcome by showing conscious wrongdoing. *Rozell v. Stiefermann*, 726 S.W.2d 342, 344 (Mo.App. W.D.1987). Mr. Blue presented several facts that might suggest a "conscious wrongdoing": Mr. Jarvis allegedly told Officer Sweiger that he did not believe that Mr. Blue was the thief; Officer Sweiger admitted that he did not have probable cause to arrest Mr. Blue when he stopped him from exiting; Mr. Blue explained that he was at the craps table and asked for the surveillance tapes to be reviewed, but Officer Sweiger refused; and Officer Sweiger only decided to arrest him because he thought Mr. Blue's answers about not knowing roulette were suspicious and he was belligerent. Officer Sweiger then presented facts to show that he did

---

7. We also note that Mr. Blue seems to be arguing that Officer Sweiger is claiming probable cause and justification as two separate defenses, and that both must be pled. But they are one defense: probable cause is the justification for the arrest, and justification is the affirmative defense to false arrest. *See Palcher v. J.C. Nichols Co.*, 783 S.W.2d 166, 168–69 (Mo.App. W.D.1990).

not act in bad faith or with malice: he thought that Mr. Blue looked enough like the suspect that he wanted to talk to him; there was no one else in the casino who looked like the suspect; he believed that Mr. Blue was being intentionally deceptive when he said that he did not know anything about roulette; and he felt that he had no other avenues of investigation available and had to decide whether he had probable cause to arrest Mr. Blue.

These facts create a genuine dispute about whether Officer Sweiger acted in bad faith or with malice, thereby precluding him from claiming official immunity. Because the facts are unclear, the question should not have been taken away from the jury. Summary judgment was not appropriate here because the facts do not support a finding that Officer Sweiger was entitled to a judgment in his favor as a matter of law. Rule 74.04(c)(6). A jury should be given an opportunity to consider all the evidence that both sides can present and decide whether or not Officer Sweiger acted in bad faith or with malice when he arrested Mr. Blue.

 Because Officer Sweiger did not have official immunity as a matter of law, we must also consider whether the arrest was justified by probable cause. "The arrest of an innocent person by an officer empowered to make an arrest is justified if the officer has a reasonable belief that the person is guilty of the offense for which he is arrested." *Edwards v. McNeill*, 894 S.W.2d 678, 683 (Mo.App. W.D.1995). And justification is a complete defense to false arrest. *Id.*

Officer Sweiger claims that he had probable cause to arrest Mr. Blue, and he claims that Mr. Blue conceded that in his response to the motion for summary judgment. Mr. Blue contests that characterization of his response to the motion for summary judgment, claiming that he did

not concede that probable cause existed. We agree; he objected to Officer Sweiger's statements of uncontroverted facts about probable cause, claiming that they were legal conclusions and not facts.

 To have probable cause to arrest, "[a]t the time of the arrest, the officer must have known facts sufficient for a prudent person to believe that the subject committed, or was committing, an offense." *Palcher v. J.C. Nichols Co.*, 783 S.W.2d 166, 169 (Mo.App. W.D.1990). The officer must have a reasonable belief that an offense is occurring. *Id.* We do not think that as a matter of law Officer Sweiger had probable cause to arrest Mr. Blue when he did so. There was no specific description of the thief from the videotape; Mr. Blue's clothing looked different from that of the suspect; Officer Sweiger admittedly did not have probable cause to arrest Mr. Blue when he stopped him; and Officer Sweiger's probable cause apparently arose because Mr. Blue became belligerent and said that he did not know how to play roulette. Those are not "facts sufficient for a prudent person to believe" that Mr. Blue committed the theft. "As a general rule the defense of probable cause is a question of fact for the jury." *Vaughn v. Sears Roebuck & Co.*, 643 S.W.2d 30, 33 (Mo.App. E.D.1982). So this is also a jury question and not a basis to grant summary judgment. Mr. Blue's third point is granted. His claim against Officer Sweiger is remanded for a trial on the merits.

### III. CONCLUSION

We affirm the trial court's denial of a judgment notwithstanding the verdict on the issue of Harrah's liability and the trial court's grant of a judgment notwithstanding the verdict on the punitive damages award. We affirm the trial court's refusal to amend the judgment to award nominal damages. We reverse the trial court's

summary judgment in favor of Officer Sweiger and remand for a trial on his liability to Mr. Blue. Affirmed in part and reversed and remanded in part.

HAROLD L. LOWENSTEIN and PATRICIA A. BRECKENRIDGE, JJ. concur.