James **HIGHFILL** and Dan Highfill, Appellants,

v.

Mary **HALE**, Respondent.

No. SC 86987.

Supreme Court of Missouri, En Banc.

March 21, 2006.

Raymond Bozarth, Christopher A. Slusher, Jefferson City, for Appellants.

David G. Bandre' Jefferson City, for Respondent.

Diana Carter, Jefferson City, for Defendants.

MICHAEL A. WOLFF, Chief Justice.

### Introduction

If "good fences make good neighbors," [1] what do bad fences make?

1. Robert Frost, "Mending Wall," in Collected Poems, Prose, & Plays 39, 39–40 (Literary Classics of the U.S.1995) (1914).

On the portion of James and Daniel Highfills' property that is adjacent to Mary Hale's property in rural Gasconade County, there is an eight-foot high metal fence spray-painted with pictures and phrases on the side facing Hale's property and "one-way glass" installed in one portion of the fence. The one-way glass would allow someone standing on the Highfills' property to observe Hale's house and yard without Hale being able to see them. Video cameras are mounted on top of the fence in a position to observe Hale's property.

To say that there is bad blood between the Highfills and Hale may understate the situation. Over the past several years, the Highfills and Hale have instigated multiple lawsuits and complaints against one another for various reasons. Some of these calls involved complaints by Hale that the Highfills were shooting firearms near her property. The Highfills claim that, around mid-September 2001, the sheriff told them that "if the calls don't stop, someone's gonna get arrested."

While responding to prior complaints, various sheriff's deputies observed the fence, but none of them asked the Highfills to remove it or informed the Highfills that the fence was unlawful.

On September 21, 2001, Hale made three calls to the Gasconade County sheriff's office. The first two calls concerned prior complaints she had made against the Highfills. During the third call, which was made to the non-emergency number, she stated that she believed that she might have been shot. Two deputies, Casey Hatton and Matthew Oller, were dispatched to Hale's residence. Hale reported that she was mowing her lawn when she heard a loud noise that sounded like a gunshot and felt a burning in her arm, resulting in a red welt-like mark remaining on her arm.

While investigating Hale's complaint, the deputies observed the fence. Although the fence had been described to them by others, this was the first occasion that either of these deputies personally observed the fence. While he was taking Hale's statement, Deputy Hatton noticed, through the gap between the fence and the ground, that a person wearing white tennis shoes was looking through the one-way glass. Deputy Hatton later identified this person as James Highfill. Deputy Oller testified that he felt it was "readily evident" that the purpose of the fence, complete with the one way glass and cameras, "was to be able to watch Ms. Hale, and, of course, Ms. Hale would know that she was being watched."

Deputy Oller reviewed the statute for stalking[2] and concluded that the "statute fit what was going on with that fence." He then telephoned the prosecuting attorney, described the fence to her, and asked her if she would consider filing charges if he arrested one or both of the Highfills for stalking. She responded that she would.

Both of the Highfills were arrested for stalking. The prosecutor ultimately decided not to file charges. Although there is some contrary evidence, when viewed in the light most favorable to the Highfills, the record supports their contention that the prior complaints between the parties were considered by the deputies in their decision to arrest the Highfills.

---

**2.** Section 565.225.2, RSMo 2000, the applicable statute here, states: "Any person who purposely and repeatedly harasses or follows with the intent of harassing another person commits the crime of stalking." "Harasses" is defined in section 565.225.1(3) as, "to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person to suffer substantial emotional distress, and that actually causes substantial emotional distress to that person."

After the events of September 21, 2001, Hale was convicted of falsely accusing Daniel Highfill of assault and of fabricating evidence in an unrelated incident.

The Highfills claim that their civil rights were violated during their confinement and that the deputies used excessive force in making the arrest, resulting in permanent injuries to James Highfill. The Highfills filed suit against the deputies and Hale for false imprisonment. After the case was transferred to Osage County, the deputies were dismissed from the case based on official immunity.

The trial court found that, "[e]ven if Defendant Mary Hale's initial report has been totally false, the deputy's first hand observations of conduct that he thought was criminal, which was unrelated to the original report, created a disconnect such that, as a matter of law, Defendant Mary Hale can have no civil liability for false imprisonment." The trial court granted summary judgment in favor of Hale. After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

The judgment is affirmed.

## DISCUSSION

### Summary Judgment Standard

Whether summary judgment should have been granted is a question of law and, therefore, reviewed *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The evidence is viewed in the light most favorable to the party opposing summary judgment—in this case, the Highfills. *See id.* Summary judgment is proper where the movant establishes that there is no genuine dispute as to the material facts and that she is entitled to judgment as a matter of law. *Id.* at 380. As a defending party, Hale must demonstrate either: (1) facts negating one or more elements of the Highfills' claim; (2) that the Highfills cannot and will not be able to prove one or more elements of their claim; or (3) that there is no material dispute about each fact necessary to establish an affirmative defense. *See id.* at 381.

### False Imprisonment

False imprisonment, also called false arrest, is "the confinement, without legal justification, by the wrongdoer of the person wronged." *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo.1969). A person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest. *Day v. Wells Fargo Guard Service Co.*, 711 S.W.2d 503, 505 (Mo. banc 1986); *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo.App. 2005). Whether a person instigated an arrest is a fact-specific inquiry; there is no fixed test that may be applied. *Smith v. Allied Supermarkets, Inc.*, 524 S.W.2d 848, 852 (Mo. banc 1975).

Merely reporting facts to a police officer, and leaving it to that officer's discretion whether to make an arrest, does not subject the reporter to liability for false arrest. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984); *Blue*, 170 S.W.3d at 472. Even reporting incorrect information may not subject the reporter to liability, if the intent was not to direct the police to arrest a specific individual. *See Smith*, 524 S.W.2d at 852 (incorrect eyewitness identification not sufficient to create liability of witness for false arrest); *Snider v. Wimberly*, 357 Mo. 491, 209 S.W.2d 239, 242 (1948) (defendant not liable for false arrest where he "did not say that plaintiff was the prowler, but only said he *thought* plaintiff was the prowler"). It "requires something more than only furnishing wrong information" to be liable for

instigating an arrest. *Snider*, 209 S.W.2d at 242. For example, evidence that a defendant "knowingly provided false, incomplete, or misleading information" may support a false imprisonment action. *Jacobs v. Bonser*, 46 S.W.3d 41, 48 (Mo.App.2001).

 The fact that the officers in this case were dismissed from the suit based on official immunity does not necessarily absolve Hale of liability. "[A]n officer's immunity does not extend to an individual who gives the officer information about a crime and encourages and requests the officer to arrest an innocent party." *Blue*, 170 S.W.3d at 473.

The Highfills argue that the trial court's judgment that there was a "disconnect" between the offense arrested for and the original report was incorrect because stalking requires conduct that is repeated and ongoing. Therefore, the Highfills argue, the deputies were required to evaluate the previous reports made by Hale. The problem with this argument is that, even if Hale had previously made false reports, the fence existed. The fence, complete with its graffiti, one-way glass, and surveillance cameras, was not a fabrication created by Hale. The deputies independently observed the fence on September 21, and it was known to have existed prior to September 21. The deputies reviewed the stalking statute and consulted the prosecutor before deciding to arrest the Highfills. If this decision was erroneous, Hale is not responsible for it simply because the deputies were on her property when they observed the fence.

The Highfills also argue that the trial court's decision was improper because "a defendant's course of conduct over an extended period of time may provide sufficient evidence to show that the defendant instigated false arrest." This argument may be disposed of in the same way as the first: even though Hale made multiple prior complaints, some of which (but not all) were found to be false, this does not negate the deputies' independent observations of the fence and their independent decision to arrest the Highfills.

If the Highfills had been arrested for shooting at Hale on September 21, this would be a different case. And, even were the intervening conduct not sufficient, here a fact even further distinguishes prior cases involving false imprisonment—it is the telephone call Deputy Oller made to the prosecuting attorney. This call was an intervening event, separating Hale's complaints from the Highfills' arrest. Even assuming that Hale's prior complaints were totally false and that the prior complaints were at least partly responsible for the decision to arrest the Highfills, Hale is not responsible for the deputy's independent evaluation of the fence in relation to the stalking statute, his independent call to the prosecutor, or the prosecutor's independent determination that she would consider filing charges. Nor is Hale responsible for the prosecutor's subsequent decision not to file charges.

The false imprisonment cases cited by the parties are generally not helpful in resolving this issue because they do not involve an independent intervening act like the call to the prosecutor. One case with similar facts, *Rankin v. Venator Group Retail, Inc.*, 93 S.W.3d 814 (Mo.App.2002), weighs in favor of Hale.

The reason the deputies went to Hale's property on September 21 was to investigate a report of shots being fired. Hale did not identify the Highfills or request that they be arrested for that offense. While there, the deputies observed the fence and independently decided to arrest the Highfills for an offense that was different from that which caused them to go to

Hale's property. Hale did not specifically request that the Highfills be arrested that day for stalking—or for any other crime.

Adopting the Highfills' interpretation would lead to potential liability for almost anyone who complains about possible criminal behavior, dependent only on whether the defendant was ultimately charged and convicted. Since the complaining citizen has no control over whether the police decide to arrest someone or whether the prosecutor decides to bring charges, the Court declines to hold a reporting person responsible for false arrest simply for reporting information to the police.

### Conclusion

Hale is entitled to summary judgment because she demonstrated facts that negate the element of causation that is necessary to the Highfills' claim. Without showing causation, the Highfills cannot prevail against Hale for instigating their false imprisonment.

The judgment is affirmed.

LAURA DENVIR STITH, PRICE, LIMBAUGH and RUSSELL, JJ., concur.

WHITE, J., dissents in separate opinion filed; TEITELMAN, J., concurs in opinion of WHITE, J.

RONNIE L. WHITE, Judge dissenting.

I respectfully dissent.[1] The principal opinion does an "end-run" around the proper standard of review for summary judgments by interjecting the outcome-oriented conclusion that the policemen's call to the prosecutor constituted an intervening event disrupting the chain of causation. This conclusion ignores the obvious, that but for Hale's instigation of an apparently false police report, and but for the protracted conflict between these two parties, which the officers considered, the Highfills would not have been subjected to a false arrest for the crime of stalking.

"The essence of the cause of action of false arrest, or false imprisonment, is the confinement, without legal justification, by the wrongdoer of the person wronged."[2] "A person may also be liable for false arrest if he does not actually confine the plaintiff but merely instigates it, as in the case of providing information on the basis of which a subsequent unlawful arrest is made."[3]

There is no dispute that the Highfills were restrained against their will when they were arrested without a warrant for stalking, and the Highfills are not required to prove that Hale explicitly ordered or directed the arrest, but only that her conduct amounted to encouraging or instigating the arrest.[4] Instigation can be shown by direct or circumstantial evidence and can take place over an extended period of time.[5]

The record supports, and the principal opinion admits, that multiple complaints made by Hale to the police prior to the day of the arrest were considered by the police at the time of the arrest. In fact, to be prosecuted for the crime of stalking there must be purposeful and repeated harassment, so the police had to consider the

---

1. This opinion substantially follows the analysis of an opinion authored by the Honorable Glenn A. Norton.

2. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984).

3. *Id.*

4. *Day v. Wells Fargo Guard Service Co.*, 711 S.W.2d 503, 505 (Mo. banc 1986).

5. *Id.*

prior incidents when making their probable cause determination.[6]

It is disingenuous to assert that the independent observation of "the fence" was all that was required to make this arrest. Moreover, the independent observation of this fence could have just as easily been interpreted as the Highfills taking defensive security measures against Hale's actions, which could just as equally be considered grounds for an arrest for harassment and stalking. Indeed, the fact that Hale placed three calls to the police on the day of arrest supports an inference that she intended to continue calling until an arrest was made. Clearly there are disputed material facts as to the intent and motivations of Hale when she made her instigating calls to the police.

That being said, justification is a complete defense to this cause of action, and even if Hale instigated the arrest, she cannot be held liable for false imprisonment if the arrest was justified.[7] To assert justification as an affirmative defense, Hale would have to prove that the arrest was lawful or that the officers had probable cause to make the arrest.[8] "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense."[9] In general, "the defense of probable cause is a question of fact for the jury."[10]

Hale claims that the arrest was justified based solely on the police officers' independent observations on the day of the arrest, but as previously noted the stalking statute only criminalizes conduct that amounts to purposeful and repeated harassment. Without an inquiry into the purpose of the fence and without specific knowledge of prior incidents of harassment by the Highfills against Hale, the police could not have formed a reasonable belief that the Highfills were guilty of stalking and there could be no probable cause to support the arrest. Moreover, knowledge of the facts and circumstances as to whether an offense has been committed for purposes of arresting someone is completely divorced from a prosecutor's decision to charge a person for a crime. The call to the prosecutor is totally irrelevant to this determination.

For summary judgment purposes, a genuine issue of material fact exists if there is competent evidence in the record of two plausible, but contradictory, accounts of the essential facts.[11] When viewed in the light most favorable to the Highfills, as is required,[12] the record reveals that there is sufficient evidence from which a jury could determine that Hale instigated the arrest. Hale also failed to demonstrate the facts necessary to support the affirmative defense of probable cause. There are two plausible accounts concerning the material facts of this case, and the call to the prosecutor did not break the chain of causation.

---

6. Section 565.225.2. All statutory citations refer to RSMo 2000.

7. *Day,* 711 S.W.2d at 505.

8. *Wehrman v. Liberty Petroleum Co.,* 382 S.W.2d 56, 63 (Mo.App.1964); *Parrott v. Reis,* 441 S.W.2d 390, 392 (Mo.App.1969).

9. *State v. Tokar,* 918 S.W.2d 753, 767 (Mo. banc 1996).

10. *Signorino v. National Super Markets, Inc.,* 782 S.W.2d 100, 103 (Mo.App.1989).

11. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993).

12. *Id.* at 376.

The principal opinion's claim that to allow a jury to hear this case would result in some type of global civil liability for anyone complaining about possible criminal behavior not only lacks merit, but essentially demonstrates a distrust of our jury system to competently examine the evidence and make a proper determination. Summary judgment in this instance was simply inappropriate. I would reverse and remand for further proceedings and trust our jury system to weigh the disputed material facts and reach the proper result.