**William J. GIBBS, Respondent,**

v.

**BLOCKBUSTER, INC., Appellant.**

**No. ED 93205.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 18, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2010.

Application for Transfer Denied
Sept. 21, 2010.

---

Theodore J. Williams, Jr., Lisa A. Larkin, Patrick I. Chavez, Kevin J. Rejent, Jennifer C. Hansen, Williams Venker & Sanders LLC, and Booker T. Shaw, Thompson Coburn LLP, St. Louis, MO, for Appellant.

Joseph R. Dulle, Sam J. Alton, Jeremy A. Salvatori, Stone, Leyton & Gershman, P.C., St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

*Introduction*

Blockbuster, Inc. (Blockbuster) appeals from the trial court's judgment, entered pursuant to the jury's verdict, in favor of William Gibbs (Gibbs) in Gibbs's action against Blockbuster for false imprisonment. The jury found Blockbuster liable for false imprisonment after Gibbs spent four months in jail as the result of statements made by one or more Blockbuster employees to the police. Gibbs was awarded $2,000,000 in damages. Prior to submitting the case to the jury, the trial court entered a partial directed verdict in favor of Gibbs, finding that one of the individuals who provided information to the police that led to Gibbs's arrest was an employee of Blockbuster at the time the information was provided. Because we find that the trial court erred in granting

Gibbs a partial directed verdict and taking this factual determination away from the jury, we reverse and remand for a new trial.

### Background

On October 4, 2004, Jeron Brown (Brown) was an employee of Blockbuster. Brown was employed as a "lead," who is the person responsible and in charge for a shift. On October 4, 2004, Brown reported to both the St. Louis Metropolitan Police Department and Blockbuster's internal crime reporting system, Netclaims,[1] that he was the victim of an attempted robbery at the Kingshighway Blockbuster store. Brown reported that he "was leaving the store to make the morning deposit, when an individual came up to him with a gun and demanded the money." Brown reported that he "was able to run away from the individual, who then turned around and fled the scene."

Five days later, on October 9, 2004, Brown again contacted the St. Louis Police Department and Netclaims. This time Brown reported a completed robbery. Brown reported that after opening the store, he prepared the deposit for the day. Brown stated that after counting the cash, he went to his car to make the bank deposit when a black male struck the car window, pulled a gun, and demanded the money. Brown reported to the police that the suspect who robbed him was the same individual who attempted to rob him on October 4, 2004. The Netclaims report noted that the robbery resulted in a loss of $1,587.34.

On November 1, 2004, John McBride (McBride), Blockbuster's regional loss prevention manager, and district manager Lauren Brown (Lauren)[2] went to the Kingshighway Blockbuster store to investigate a report of "shrink"[3] at that location. Upon arriving at the store, McBride ran a report to determine the rental product missing during an inventory cycle. The report listed Brown as the last person to have rented some of the missing rental product. This report caused McBride and Lauren to believe that Brown had possibly taken some of the missing inventory.

After McBride and Lauren reviewed the reports, they met with Brown to discuss the inventory issues. After discussing the inventory problems,[4] McBride decided to discuss the October 2004 incidents with Brown. McBride testified as follows regarding his conversation with Brown on November 1:

> ... I said, ["]I want to revisit what happened on the 4th and the 9th.["] When I went to the 4th, measuring his behavior, how he was going to respond, and he seemed pretty straightforward. And the 9th, his behavior was different, and also, his facts were different from the report he filed on the Netclaims.
>
> So at that point then I just went into a typical interview I would with any other individual that I think, you know, if they are lying to me. So during that conver-

---

1. Netclaims is a system whereby Blockbuster employees call an 800–number to report an incident in a store.

2. Lauren Brown and Jeron Brown are not related. To avoid confusion we will refer to Lauren Brown by her first name.

3. McBride testified that "shrink" is "what you lose in product compared to what the sales are, and it comes up in a percentage."

McBride explained that "[s]o if you had a high percentage of shrink, it means you lost a lot of your inventory that's unknown."

4. McBride testified that Brown did not admit to stealing product from the store; However, Lauren testified that "Jeron Brown admitted to us to stealing a lot of merchandise totalling (sic) a lot of money."

sation [Brown] told me, [”]Well, yeah, it wasn't a robbery.[”] [Brown] told me that, in, fact, a ex-employee by the name of Will G. came in between October 4 and the 9th and said, [”]Hey, you know, I heard you got robbed on the 4th or attempted to get robbed. I can come in, and we can set this up, and we can split the money.[”] And this is what [Brown] told me.

Lauren testified, via her videotaped deposition, that:

[A]t that time [Brown] mentioned William Gibbs had approached him about a week after he was robbed before and kind of concocted a, hey, this is a good way for us to make some money, and basically told us how he and William Gibbs concocted a plan to stage a robbery.

McBride testified that Brown explained to him that he did not tell the police this information because Brown was scared of Gibbs. McBride also testified that he did not know "Will G.", but that Brown told McBride "Will G." was a former employee, "William Gibbs." Brown told McBride that he did not know where the money was and that he had not seen Gibbs since the "robbery."

After his discussion with Brown, McBride spoke with Lauren and recommended termination of Brown's employment for dishonesty. McBride testified that because Brown was not his employee, he did not have the authority to terminate Brown's employment with Blockbuster. After talking to Lauren, McBride called the police. McBride then informed Brown that the police were on their way and encouraged Brown to be honest with the officers. McBride asked Brown if he had any personal property at work and told Brown, "You can kind of figure out what's

going to happen." McBride asked Brown not to come back to the store. McBride told Brown that he would be arrested for trespassing if he returned to the store. McBride also took Brown's keys to the building. When the police arrived, McBride told Brown to clock out, which he did.

Lauren, who did have the authority to terminate Brown's employment, told Brown that his employment with Blockbuster was "suspended pending conversation with HR," though she was "certain that Jeron Brown would never work at Blockbuster again." Lauren testified that she did everything she could to relay to Brown that he would not be working at Blockbuster again. Lauren told Brown, "I'm pretty sure you can see the writing on the wall with, you know, what direction your employment with us is going." Lauren testified that Brown said, "yeah," and nodded his head. Lauren then told Brown, "if you have any personal things in the store, please grab them, also I need your keys." Once Brown's final paycheck arrived at the store, Lauren tried to contact Brown to tell him that his employment was terminated, but she never actually spoke with him. Blockbuster's Involuntary Separation form notes Brown's "Separation Date" as November 17, 2004, and lists the termination reason as "dishonesty."

Lauren testified that "any time someone admits to me that they stole money from me or admits to a Class A violation, particularly theft, I make it very obvious to them without actually telling them that they're terminated, that they're not going to be working for us any more." [5] Lauren testified that she never terminated employees immediately for misconduct, but

---

**5.** At Blockbuster, stealing is a Class A violation, and is a "gross violation" of company policy and may be grounds for immediate termination.

would first suspend the employee and then request a final paycheck from the payroll department. Upon receiving the final paycheck, Lauren then officially terminated the employee. Lauren proceeded in this manner because she believed an employee could not be lawfully terminated until the employee received his final paycheck.

When McBride called the police to have an officer come to the Kingshighway Blockbuster store, McBride told the police that "the individual that reported [the October 9 robbery] is now giving a different story." Detectives Clinton Bertke (Bertke) and Dyson (Dyson) responded to a call from dispatch that "the manager of Blockbuster had some information on a robbery."[6] Bertke testified that McBride told him that Brown now was reporting that he knew who robbed him at gunpoint a few weeks prior. McBride testified that he explained to the officers that, "[Brown], who reported that he was robbed on October 9, has now changed his story. He is saying that him [ sic] and an ex-employee by the name of William Gibbs were working together to fake a robbery and take the money." McBride testified that he told the detectives that he was suspicious of Brown being involved in the stolen money based on his behavior and the statement he provided. McBride also testified that he told the officers that Brown told him that "[Brown and Gibbs] worked together to get the money."

The detectives talked to Brown separately inside the store. The detectives were outside of the presence of McBride and Lauren. During that interview, Brown told the detectives that he believed "Will G." or "William G." robbed him on October 9. At some point the detectives requested information on "William G."

from McBride. McBride then provided the detectives the name and address of William Gibbs from Blockbuster's customer file. Officer Bertke testified that Brown was the only person to identify "William Gibbs" in connection with the alleged robbery on October 9.

Brown then voluntarily left with the detectives and accompanied them to the North Patrol division police station. At that time, McBride expected that the police were going to charge Brown because of what Brown had told McBride. However, no charges were ever brought against Brown.

Following Bertke's discussions with McBride and Brown, Bertke requested a "wanted" for Gibbs. Gibbs was later arrested on November 29, 2004, and charged with robbery in the first degree and armed criminal action.

While not admitted as evidence at trial, offers of proof were presented by Blockbuster regarding the warrant and indictment process in Gibbs's criminal case.

After Gibbs's arrest, Bertke contacted Blockbuster to have a representative report to the Circuit Attorney's Office. McBride reported to the Circuit Attorney's Office on behalf of Blockbuster. At the office, McBride spoke with Bertke and the prosecuting attorney. McBride was informed that Gibbs had been arrested for robbery and that Brown was going to be a witness against Gibbs. This was the first time McBride heard that Brown was not charged with a crime. McBride testified that at that point he told Bertke and the prosecuting attorney that "[Brown] and [Gibbs] should be arrested for theft of the deposit" and that he wanted Brown charged. However, Tracy Dannis (Dannis),

6. These officers were assigned to both the reported robbery attempt on October 4 and the robbery on October 9.

an assistant circuit attorney for the City of St. Louis, testified that she did not recall McBride telling her that he wanted Brown arrested for filing a false police report or for admitting to stealing the money Gibbs was being charged with robbing. Dannis testified that she did not recall what McBride told her on that date, but that if she was told inconsistent information she would not have charged Gibbs.

Gibbs was incarcerated for 134 days before he was released on April 11, 2005.[7]

On May 2, 2007, Gibbs filed his First Amended Petition alleging nine counts including causes of action for false imprisonment, negligence, slander, and malicious prosecution against both Blockbuster and Brown. Gibbs also alleged Blockbuster was liable for the tortious conduct of Brown under the doctrine of respondeat superior.

Gibbs chose to pursue only his false imprisonment claim against Blockbuster. The case was tried before a jury from August 26 through 29, 2008. After the trial concluded, the jury was unable to render a unanimous verdict. During a discussion with the jury during deliberations, one of the jurors informed the court, "We are not even able to come to an agreement on whether or not Mr. Brown was an employee of Blockbuster when he went to the police station." The trial resulted in a hung jury and the trial court declared a mistrial.

The case was tried again on February 9, 10, 11, and 13, 2009. Most of the evidence presented was identical to that presented in the first trial, including the trial court's rulings on pre-trial motions. Gibbs testified on his own behalf and also presented witness testimony from Detective Bertke, McBride, and Warren Thomas, classification manager at the City of St. Louis Justice Center. Gibbs testified that he neither robbed Brown of the deposit nor did he conspire with Brown to steal the Blockbuster deposit. Blockbuster introduced Lauren's videotaped deposition as evidence at trial. One notable difference between the first and second trials was the trial court's handling of the issue of Brown's employment status with Blockbuster on November 1, 2004. While this issue was submitted to the jury in the first trial, during the second trial the trial court decided this issue as a matter of law.

In the second trial, at the close of all the relevant evidence, though not technically at the close of all the evidence, the trial court permitted Gibbs to argue his motion for partial directed verdict on the issue of Brown's employment status during the interrogation by police on November 1, 2004.[8] Gibbs argued that Lauren did not terminate Brown on November 1, 2004, but only suspended him, and that pursuant to the involuntary separation statement, Brown was not actually terminated until November 17, 2004. Gibbs also argued that McBride had no authority to terminate Brown. Gibbs claimed, not only was there

---

7. Evidence was not presented at trial regarding the circumstances surrounding Gibbs's release from jail. From our review of the transcript, it appears a nolle prosequi was filed on the charges against Gibbs. However, the trial court determined the jury was not to receive this evidence.

8. During pre-trial conference on Gibbs's motion in limine, the court first noted that Brown's employment with Blockbuster was "for the jury" to decide. However, the court later noted in the same conference that "this is going to be an issue that I am going to decide at the end of the case." After Blockbuster argued to the court in the pre-trial conference that Brown was no longer an employee of Blockbuster at the time he talked to the police on November 1, 2004, the court again noted, "You can make that argument in opening, but I think it's a legal determination at the close of all the evidence."

no evidence that Brown was terminated, but there was also no attempt to communicate Brown's alleged termination of employment to the police. Gibbs asserts that no one told the police that Brown was terminated or was no longer authorized to speak on behalf of Blockbuster.

In opposition to Gibbs's motion for partial directed verdict, Blockbuster argued that the evidence was undisputed that Brown was told by Blockbuster management that he would never work at Blockbuster again, that if Brown returned to the store he would be arrested as a trespasser, that Brown was told to give up his keys and take his personal items, and that Brown knew when he left the store that day that he would never work at Blockbuster again because of the stealing. Blockbuster claimed that the use of the terms "suspended" versus "terminated" was simply semantics, and that because of Lauren's understanding of the law, her policy was to give an employee his or her final paycheck before legally terminating him or her.

The trial court ruled in favor of Gibbs, noting:

> So I think there is no reasonable issue of fact about it. [Brown] is still an employee as of November 1st, and I don't see why that should be submitted to the jury in this case. Upon further reflection, I don't think there is any reasonable conclusion otherwise. So I will grant that motion ... partial directed verdict on the issue of whether or not Mr. Brown was employed on November 1st. He was employed, and that coupled with the evidence through McBride that he was encouraged to give a statement to the police and that the police—there is disputed evidence, I guess, but that the police could reasonably conclude he was being offered to give up a statement as an employee of Blockbuster.

The second trial resulted in a verdict for Gibbs, with the jury awarding Gibbs $1,500,000 in compensatory damages and $500,000 in punitive damages. Blockbuster's post-trial motions were denied on June 9, 2009.

Blockbuster filed a timely Notice of Appeal on June 17, 2009. This appeal follows.

### Points on Appeal

Blockbuster presents six points on appeal. Blockbuster's first and fifth points on appeal address the submissibility of Gibbs's claims of false imprisonment and punitive damages. Blockbuster's fourth point on appeal focuses on the trial court's grant of Gibbs's motion for partial directed verdict. Because our findings with regard to the first, fourth and fifth points on appeal require reversal of the trial court's judgment and remand for a new trial, we do not review Blockbuster's remaining three points on appeal.

Regarding the submissibility of Gibbs's claim for false imprisonment, Blockbuster argues in its first point on appeal that the trial court erred in denying its Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict. Blockbuster alleges Gibbs failed to make a submissible case on his false imprisonment claim because the undisputed evidence demonstrated that Gibbs's arrest was not false, but resulted · from lawful process by the St. Louis City police officers, the Circuit Attorney for the City of St. Louis, the Circuit Court for the Twenty–Second Judicial Circuit, and the grand jury of the City of St. Louis. In particular, Blockbuster argues that the evidence introduced at trial does not prove the element of "unlawfulness" required to show false imprisonment under Missouri law.

Blockbuster's fifth point on appeal alleges that the trial court erred in denying its Motion for Directed Verdict and submitting Gibbs's claim of punitive damages to the jury. In particular, Blockbuster alleges Gibbs failed to prove the existence of aggravating circumstances by clear and convincing evidence because, even when viewed in the light favorable to the jury's verdict, the evidence did not support a claim that Blockbuster, through its agent or alleged agents, acted with evil motive or reckless indifference to the rights of others.

In its fourth point, Blockbuster alleges the trial court erred in granting Gibbs's Motion for Partial Directed Verdict at the Close of All Evidence on the issues of whether Blockbuster employed Brown on November 1, 2004, and whether Brown acted within the course and scope of his employment when he provided information about Gibbs to the police. Blockbuster claims those issues were appropriate for the jury to decide, not the court. Blockbuster argues that both parties presented disputed evidence of an agency relationship, and the jury, as the trier of fact, reasonably could have determined from the evidence adduced at trial that Brown was neither Blockbuster's employee nor acting within the course and scope of his employment with Blockbuster during the police investigation on November 1.

In its three remaining points on appeal, Blockbuster's alleges: (1) the trial court erred in denying its Motion for New Trial because the court abused its discretion by sustaining Gibbs's objections to Blockbuster's introduction of evidence that would demonstrate Gibbs's arrest was legal; (2) the trial court erred in rejecting Blockbuster's proffered jury instructions and in submitting the verdict director on Gibbs's claim of false imprisonment because the submitted instruction did not require the

jury to find Gibbs's arrest was unlawful and did not define "instigate;" and (3) the trial court erred in denying Blockbuster's Motion for New Trial, or in the Alternative, for Substantial Remittitur, because the trial court abused its discretion in failing to remit the compensatory and punitive damage awards.

### Discussion

We first address Blockbuster's allegations regarding the submissibility of the claims of false imprisonment and punitive damages. Should we find the evidence does not support the submission of these claims to the jury, our analysis ends here with an outright reversal of the trial court's judgment, and we need not address the trial court's grant of the partial directed verdict. However, if Gibbs is found to have made a submissible case for false imprisonment and punitive damages on the evidence presented, we then consider whether the trial court erred when it granted Gibbs's motion for partial directed verdict.

### I. Point I—Submissibility of False Imprisonment Claim

In its first point on appeal, Blockbuster argues that Gibbs failed to make a submissible case on his false imprisonment claim because the undisputed evidence demonstrated that Gibbs's arrest was not false, but resulted from lawful process. Blockbuster posits that the involvement by the police, circuit attorney, circuit court, and grand jury in Gibbs's arrest resulted in "lawful process," which precluded a jury finding that Gibbs's arrest was unlawful. We disagree.

Although the record contains evidence from which a jury reasonably may find that Gibbs's arrest was lawful, such evi-

**168**

dence is not undisputed.[9] While evidence of the lawfulness of the arrest may support a jury finding in favor of Blockbuster, such evidence does not preclude the submission of Gibbs's claim where the jury reasonably may also find from the evidence before it that Gibbs's arrest was not legal. We find that Gibbs presented substantial evidence to support each fact necessary to establish Blockbuster's liability for false imprisonment. The factual disputes relating to the circumstances of Gibbs's arrest were sufficiently formed to allow submission of his claim of false imprisonment to the jury, and to require the trial court's denial of Blockbuster's motions for directed verdict and judgment notwithstanding the verdict.

### Standard of Review

■ "When reviewing a motion for a directed verdict and a judgment notwithstanding the verdict, the court must determine whether the plaintiff made a submissible case." *Guidry v. Charter Communications, Inc.*, 269 S.W.3d 520, 527 (Mo.App. E.D.2008). A case is only submissible if "each and every fact essential to liability is predicated upon legal and substantial evidence." *Id.* (internal quotations omitted). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Blue v. Harrah's N. Kansas City*, 170 S.W.3d 466, 472 (Mo.App. W.D. 2005). Evidence is deemed insufficient, and this Court will reverse, "where there is a complete absence of probative fact to support the verdict." *Guidry*, 269 S.W.3d at 527 (internal quotations omitted).

■ In determining whether Gibbs has made a submissible case on his claim

of false imprisonment, this Court examines the evidence in the "light most favorable to the verdict, giving [Gibbs] the benefits of all reasonable inferences from the verdict, and disregarding unfavorable evidence." *Id.* Granting a judgment notwithstanding the verdict is a drastic decision, and this Court will not overturn a jury's verdict unless there are no probative facts to support the verdict. *Blue*, 170 S.W.3d at 472.

■ "Whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law." *Kiesel Co. v. J & B Props., Inc.*, 241 S.W.3d 868, 871 (Mo.App. E.D.2008). We review questions of law *de novo*. *Guidry*, 269 S.W.3d at 527.

### Analysis

■ Blockbuster asserts that although Gibbs was confined against his will, his detention was not unlawful and, therefore, Gibbs's claim for false imprisonment should not have been submitted to the jury. Blockbuster argues that "there was no evidence suggesting [Gibbs's] confinement was unlawful or not the result of lawful process."

■ In order to make a submissible case, Gibbs must present substantial evidence for every fact essential to liability. *Jacobs v. Bonser*, 46 S.W.3d 41, 48 (Mo. App. E.D.2001). The Missouri Supreme Court has held repeatedly that false imprisonment occurs when there is "confinement, without legal justification, by the wrongdoer of the person wronged." *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. banc 2006); *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 504–05 (Mo. banc 1986); *Rustici v. Weidemeyer*, 673 S.W.2d

**9.** Blockbuster also argues that the trial court erred in precluding the admission of evidence of the lawfulness of Gibbs's arrest. Blockbus-

ter's evidentiary arguments are contained in its second point on appeal.

762, 767 (Mo. banc 1984). The elements of a cause of action for false imprisonment in Missouri are: (1) the detention or restraint of one against his will, and (2) the unlawfulness of such detention or restraint. *Blue,* 170 S.W.3d at 472.

 A person need not actually confine another to be held liable for false imprisonment. It is well settled in Missouri that a person may be held liable for false imprisonment if he merely encourages, causes, promotes, or instigates the arrest of another, such as providing information that forms the basis of a subsequent unlawful arrest. *Highfill,* 186 S.W.3d at 280; *Rustici,* 673 S.W.2d at 767; *Vimont v. S.S. Kresge Co.,* 291 S.W. 159, 160 (Mo.App.1927) ("In an action for false imprisonment, it is not essential that plaintiff prove that defendant actually ordered, requested, or directed his arrest; but he may make his case by showing that defendant merely instigated it."). "Instigate" has been held to mean "to stimulate or goad into action;" however, a fixed test has not been established to determine what constitutes "instigation," and therefore each case must be determined on its own set of facts. *Linkogel v. Baker Protective Serv. Inc.,* 626 S.W.2d 380, 384 (Mo.App. E.D.1981).

 Though false imprisonment liability may arise from instigating, causing, or procuring an arrest, the act of providing information to the police does not automatically trigger such liability, even if the information subsequently leads to an arrest. *Blue,* 170 S.W.3d at 473. A person who merely states facts to a law enforcement officer, while leaving it to the officer's discretion to act upon such information, is not liable for false imprisonment. *Highfill,* 186 S.W.3d at 280; *Snider v. Wimberly,* 357 Mo. 491, 209 S.W.2d 239, 241 (1948) ("[O]ne who merely states to an officer what he knows of a supposed offense, even though he expresses the opinion that there is ground for an arrest, but without making any charge, or requesting an arrest, does not thereby make himself liable in an action for illegal arrest."); *Blue,* 170 S.W.3d at 473 ("[A] person may not be held liable for stating the truth to one who ultimately effects another's arrest."); *Vimont,* 291 S.W. at 160 ("[I]f the defendant directs a police officer to take the plaintiff into custody, he is necessarily liable to respond in damages for a resulting false imprisonment; but if, to the contrary, the defendant merely states the facts to the officer, leaving it with him and his superiors to act or not, as they see fit, the defendant is not liable.").

 Even if the information provided to law enforcement is inaccurate or incorrect, that fact alone may not support liability for false imprisonment. *Jacobs,* 46 S.W.3d at 48; *Garner v. Texas Disc. Gas Co.,* 723 S.W.2d 446, 447 (Mo.App. E.D.1986); *Davis v. Weil Clothing Co.,* 367 S.W.2d 19, 23 (Mo.App.1963); *see also Highfill,* 186 S.W.3d at 280 ("Even reporting incorrect information may not subject the reporter to liability, if the intent was not to direct the police to arrest a specific individual."). Liability for instigating an arrest requires something more than only furnishing wrong information. *Highfill,* 186 S.W.3d at 280–81; *Davis,* 367 S.W.2d at 23. For example, a jury may reasonably infer "instigation" from evidence that the defendant "knowingly provided false, incomplete or misleading information, and an illegal arrest results." *Jacobs,* 46 S.W.3d at 48; *see also Highfill,* 186 S.W.3d at 281 ("[E]vidence that a defendant 'knowingly provided false, incomplete, or misleading information' may support a false imprisonment action."); *Davis,* 367 S.W.2d at 23 (*quoting Richardson v. Empire Trust Co.,* 230 Mo.App. 580, 94 S.W.2d 966, 971 (1936): "One who merely

gives information regarding an offense justifying arrest does not incur liability even though, in giving such information, he acts maliciously or acts without probable cause, unless he goes beyond such point and instigates the arrest by suggestion and encouragement and countenances it. [ ] A cause of action for false imprisonment cannot be based upon a mere negation or failure to speak or act, but can only be based upon some affirmative act instigating thereto.").

 To the contrary, "no action for false imprisonment may be maintained for an arrest which is lawful, no matter at whose instigation nor for what motive the arrest was made." *Routh v. Burlington N. R.R. Co.,* 708 S.W.2d 211, 216 (Mo.App. W.D.1986). "If the arrest of the plaintiff was lawful, an action for false arrest will not lie, and it can make no difference at whose instigation it was made or what the motive was." *Reaves v. Rieger,* 241 S.W.2d 389, 396 (Mo.App.1951). "This must be so in reason, for there can be no trespass where the arrest is by warrant of law." *Id.* The legality of an arrest is a question for the jury to decide. *Linkogel,* 626 S.W.2d at 384.

In reviewing this point on appeal, we are required to view the evidence in the light most favorable to the verdict, giving Gibbs the benefit of all reasonable inferences from the verdict, and disregarding evidence unfavorable to the verdict. Following this standard of review, the record shows that Gibbs was arrested for two alleged crimes against Blockbuster as the result of statements made by one or more Blockbuster employees. Gibbs was incarcerated for several months following his arrest. Gibbs was not convicted of any crime, and the charges against him were dropped after an extended period of incarceration. The only persons providing information to law enforcement officials

were one or more agents of Blockbuster. While there was conflicting testimony as to what information was provided to the responding police officers on November 1, there is sufficient evidence from which a jury could conclude that the information alleged Gibbs committed an armed robbery when in fact Blockbuster, through its employees, was aware that no armed robbery occurred. Viewed in this light, the evidence suggests that Blockbuster "knowingly provided false, incomplete or misleading information," resulting in the instigation of Gibbs's arrest.

Evidence was presented at trial from which a juror could reasonably find that Brown was an employee of Blockbuster at the time he reported to the police that Gibbs robbed him at gunpoint on October 9. Substantial evidence was also presented that Brown reported this information to the police knowing the information to be false. A juror could reasonably find that this information, provided by Brown as an agent of Blockbuster, resulted in Gibbs's "confinement, without legal justification." *See Highfill,* 186 S.W.3d at 280. Evidence also was presented from which a juror could reasonably find that McBride told the police that Brown "knew who robbed him at gunpoint a few weeks ago," when in fact McBride believed that Brown had not been robbed at gunpoint, but had orchestrated the fake robbery. We conclude that a juror reasonably could find that the "false, incomplete, or misleading information" provided by Blockbuster to the police resulted in Gibbs's false imprisonment. *See Davis,* 367 S.W.2d at 23. The evidence presented at trial demonstrated that, based on the statements of either Brown or McBride, or both, a "jury could reasonably infer instigation of the illegal arrest." *See Jacobs,* 46 S.W.3d at 48.

Admittedly, substantial evidence also was admitted at trial from which a jury

reasonably could conclude that Gibbs's arrest was lawful. However, the presence of evidence supporting Blockbuster's argument does not preclude submissibility of Gibbs's claim for false imprisonment, but merely creates two reasonable alternative findings for the jury. Accordingly, Gibbs made a submissible case, and it is left for the jury to make the necessary credibility determinations and render a verdict. *See Blue*, 170 S.W.3d at 474.

We conclude, following our review of the entire transcript, that Gibbs presented sufficient evidence on the elements of false imprisonment to warrant submitting the case to the jury. Notwithstanding the fact that the parties presented sharply conflicting testimony with respect to whether Gibbs was falsely arrested, the jury had sufficient evidence from which it could find that Blockbuster, through one or more of its agents, instigated an unlawful restraint of Gibbs against his will. Because such evidence supports a finding of false imprisonment, Gibbs made a submissible case and the trial court did not err in allowing the case to go to the jury.

Blockbuster's first point on appeal is denied.

## II. Point V—Submissibility of Punitive Damages Claims

We now turn to the submissibility of Gibbs's claim for punitive damages. In its fifth point on appeal, Blockbuster argues that the trial court erred in denying its motion for directed verdict and submitting Gibbs's claim for punitive damages because Gibbs failed to prove clearly and convincingly that aggravated circumstances allowing the award of punitive damages existed in this case. Blockbuster contends there was no evidence, even when viewed in the light most favorable to the jury's verdict, that Blockbuster, through its agents or alleged agents, acted with the requisite evil motive or reckless indifference to the rights of others. We disagree.

### Standard of Review

 "Whether there is sufficient evidence to support an award of punitive damages is a question of law." *Alhalabai v. Missouri Dept. of Natural Res.*, 300 S.W.3d 518, 528 (Mo.App. E.D.2009). We review the evidence and all reasonable inferences in the light most favorable to submissibility, disregarding all adverse evidence and inferences, to determine whether, as a matter of law, the evidence was sufficient to submit the claim for punitive damages. *Id.*; *City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 627 (Mo.App. W.D.2009). Only evidence that tends to support the submission should be considered. *Alhalabai*, 300 S.W.3d at 529.

### Analysis

 Blockbuster suggests that the undisputed evidence failed to demonstrate that its agents acted with "reckless disregard or evil motive, but instead showed reasonable acts," such as "the giving of information requested by the police, which was used by them as part of their investigation." Blockbuster argues that Gibbs failed to prove by clear and convincing evidence that either Brown or McBride acted with any evil motive when speaking with the police, thereby precluding the submission of punitive damages. To the contrary, we find that, when viewed in the light most favorable to submissibility, the evidence presented at trial was sufficient to submit the claim for punitive damages to the jury.

 To make a submissible case for punitive damages, the evidence and the inferences drawn therefrom must allow a reasonable juror to conclude that the

plaintiff established with convincing clarity that the defendant's conduct was outrageous because of evil motive or reckless indifference. *City of Greenwood*, 299 S.W.3d at 627–28; *see also Atkinson v. Corson*, 289 S.W.3d 269, 281 (Mo.App. W.D.2009) ("To make a submissible case for punitive damages, [plaintiff] was required to show, by clear and convincing evidence, that [defendant's] conduct constituted 'either . . . a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred).") "Factual inferences which convincingly and clearly support the notion that the defendant acted with evil motive or reckless indifference to the rights of others are sufficient to meet the standard for submission of punitive damages." *Atkinson*, 289 S.W.3d at 281. "It is not the commission of the tort that matters, but the conduct or motive that provides the basis for punitive damages." *Blue*, 170 S.W.3d at 477. "Punitive damages are extraordinary and harsh, and so the evil motive or reckless indifference must be proven by clear and convincing evidence." *Id.*

To support an award of punitive damages in a claim for false imprisonment, a jury must find that the defendant not only intended the plaintiff's confinement, but Defendant knew the confinement to be unlawful at the time it occurred. *Rustici*, 673 S.W.2d at 771–72.

"The law will imply such knowledge, however, where the defendant acts with reckless disregard or conscious indifference of the rights or interests of another." *Id.* at 772.

We find that the evidence, and the inferences drawn therefrom, viewed in the light most favorable to submissibility, are sufficient to permit a reasonable juror to conclude that Gibbs established with convincing clarity that Blockbuster's conduct, at least through Brown, was outrageous because of evil motive or reckless indifference.[10] The evidence presented at trial was sufficient for a reasonable juror to find that Gibbs did not commit any crime against Blockbuster and that Brown intentionally gave false information to the police regarding Gibbs's involvement in the alleged robberies, knowing that information to be false. Gibbs testified at trial that he was innocent of the crimes for which he was incarcerated. Gibbs specifically testified that on October 9 he did not point a gun at Brown, did not steal any money from Brown, did not rob Brown of any money, and did not conspire with Brown to steal any money. At the same time, evidence was presented indicating Brown intentionally lied to the police about Gibbs's involvement in the alleged robberies. McBride testified that Brown told him that "well, yeah, it wasn't a robbery," and that "in, fact, a ex-employee by the name of Will G. came in

10. The punitive damages instruction submitted to the jury only requires a finding that "the conduct of defendant as submitted in Instruction Number 6 was outrageous because of defendant's evil motive or reckless indifference to the rights of others." Instruction Number 6 refers to Blockbuster as "defendant, through Jeron Brown and/or John McBride." Because the instructions allow for a finding of liability against Blockbuster based on the actions of either Brown *or* McBride, we only address the punitive damages claim with regard to Brown. We are less convinced that the evidence supports a finding that McBride possessed the requisite "evil motive or reckless indifference" based on his conduct. Had the jury found Blockbuster liable based solely on the actions of McBride, we would need to address this issue. However, because we are unable to determine the conduct upon which the jury found Blockbuster liable, we need not reach this determination and instead focus on the submissibility of the punitive damages claim based on Brown's conduct alone.

between October 4 and the 9th and said, [']Hey, you know, I heard you got robbed on the 4th or attempted to get robbed. I can come in, and we can set this up, and we can split the money.['].'' However, there is testimony that after Brown told McBride the "robbery" was really a set-up and not a robbery at all, Brown then told the police that "Will G." or "William G." robbed him on October 9. Based upon this evidence, a juror reasonably could find that Brown intentionally lied when he named Gibbs as the person who robbed him. Such a finding reasonably supports a further finding that Brown acted with an evil motive and outrageous conduct when he named Gibbs as the person who robbed him. The substantial contradiction of the statements made by Brown to McBride and the police is sufficient for a reasonable juror to find that Brown fabricated the statement he gave to the police about Gibbs robbing him at gunpoint. While it is impossible to know the events that occurred on October 9, sufficient evidence was presented from which a jury could find that Gibbs did not commit the crimes of robbery in the first degree and armed criminal action which is contrary to what Brown told police on November 1. Intentionally providing false information to the police of another's involvement in an alleged crime can demonstrate evil motive. *See Jacobs,* 46 S.W.3d at 49.

We believe that the evidence presented could allow a jury composed of reasonable persons to conclude that Brown falsely and intentionally reported to police Gibbs's involvement in an armed robbery. Upon these facts, a jury could conclude that Blockbuster instigated Gibbs's false arrest without just cause or excuse. Assuming the jury accepted Gibbs's evidence that he was arrested for a crime he did not commit, the jury reasonably could conclude that Brown's conduct was committed with malice, and was willful and wanton. We

disagree with Blockbuster that the evidence was legally insufficient to submit the issue of punitive damages.

Because the evidence presented at trial was sufficient to allow a jury to find the requisite malice to support a punitive damage award, we find that the trial court did not err in submitting the issue of punitive damages to the jury on Gibbs's false imprisonment claim.

Blockbuster's fifth point on appeal is denied.

### III. Point IV—Brown's Employment Status

■ Having found that Gibbs made a submissible case on his claims of false imprisonment and punitive damages, we now consider Blockbuster's argument that the trial court erred in granting Gibbs's motion for partial directed verdict. In granting Gibbs's motion, the trial court ruled, as a matter of law, that Brown was an employee of Blockbuster and was acting within the scope of his employment at the time Brown spoke with the police on November 1. Blockbuster asserts in its fourth point on appeal that this ruling was erroneous because the evidence presented at trial regarding Brown's relationship with Blockbuster was disputed and left factual issues for the jury's determination. Blockbuster argues that the jury, not the trial court, should have decided, based on the evidence adduced, whether Brown was employed by Blockbuster and acting within the course and scope of his employment during his discussions with the police on November 1. We agree that these issues remained within the province of the jury to decide. The record before us contains evidence from which reasonable minds could differ as to Brown's employment status, and precluded the entry of a partial directed verdict with regard to that issue.

### Standard of Review

Critical to our analysis of Blockbuster's appeal from the trial court's grant of Gibbs's motion for partial directed verdict is the standard of review. The standard of review for examining the trial court's grant of a directed verdict differs significantly when the motion is granted in favor of the plaintiff, or the party bearing the burden of proof, as opposed to when the motion is granted in favor of the defendant, or the party benefiting from the burden of proof.

In considering the propriety of directing a verdict in favor of the plaintiff, this Court "views the evidence in the light most favorable to the defendant and disregards any unfavorable evidence or inferences." *Parker v. Pine*, 617 S.W.2d 536, 541 (Mo.App. W.D.1981). "A verdict may be directed for a plaintiff only in those rare cases where there are no genuine fact issues which should be submitted to a jury." *Id.* "The cause may not be taken from the jury unless the evidence is so strongly against the defendant as to leave no room for reasonable minds to differ." *Id.* "Only in exceptional cases as where the defendant's evidence establishes plaintiff's claim has it been indicated that there may be an exception to the general rule against directing a verdict in favor of the party having the burden of proof." *Id.*

The Missouri Supreme Court, in *Brandt v. Pelican*, reaffirmed the very limited circumstances under which a verdict will be directed in favor of the party having the burden of proof:

> It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof.... There is, however, a well-recognized exception to the rule. If the opponent, that is that party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass.

856 S.W.2d 658, 664 (Mo. banc 1993), *quoting Coleman v. Jackson County*, 349 Mo. 255, 160 S.W.2d 691, 693 (1942).

The Supreme Court goes on to note that:

> Except for the part of the *Coleman* rule concerning undisputed documentary proof, a directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be; a directed verdict in favor of the party having the burden of proof (usually the plaintiff) is never based upon the plaintiff's evidence. This is in recognition of the fact that the defendant, who has the benefit of the burden of proof, is entitled to try the case with no evidence at all and to rely solely upon the jury disbelieving the plaintiff's evidence. This strategy may result in a loss for the defendant, but it will not be on a directed verdict; the defendant is entitled to have the case go to the jury.

*Id.* at 665–66.

This Court, while acknowledging the continued viability of both this general rule

and its narrow exception, has recognized that the exception is limited to situations when the "proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted." *BMK Corp. v. The Clayton Corp.*, 226 S.W.3d 179, 193 (Mo.App. E.D.2007).

### Analysis

#### A. Brown's Employment with Block-buster

■■■■■ It is clear "the doctrine of respondeat superior imposes upon an employer vicarious liability for the negligent acts or omissions of his employee or agent that are committed within the scope of the employment or agency." *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 566 (Mo.App. E.D.2002). However, as the Missouri Supreme Court has noted, "[g]enerally, the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Johnson v. Bi–State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990); *The Bar Plan v. Cooper*, 290 S.W.3d 788, 791 (Mo. App. E.D.2009); *Scott*, 70 S.W.3d at 566. On the other hand, "[t]he employment relationship is a question of law for the court only where material facts from which it is to be inferred are not in dispute and only one reasonable conclusion can be drawn from the material facts." *Johnson*, 793 S.W.2d at 867. Where there is uncertainty arising either from conflict in the testimony or because the undisputed facts may lead reasonable persons to draw different conclusions as to whether a master-servant relationship exists, the question is not one of law but of fact to be settled by the jury.

*Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo.App. W.D.2000).

Given the standard of review in cases where the trial court has directed a verdict for the plaintiff, we review the evidence in the light most favorable to the defendant and disregard any unfavorable evidence or inferences. Viewing the evidence in this light, the evidence shows that Brown was told by McBride that he was not to return to the Blockbuster store or risk being arrested for trespassing. McBride also took Brown's store keys and told Brown to clock out when the police arrived. Brown also was told by McBride, "You can kind of figure out what's going to happen," and was told to take his personal property from the store.

Viewing the evidence in the light most favorable to Blockbuster, the evidence also indicates that Lauren told Brown that he would no longer be working at Blockbuster. Lauren told Brown to take his personal belongings and to turn over his keys to the store. Lauren also told Brown, "I'm pretty sure you can see the writing on the wall with, you know, what direction your employment with [Blockbuster] is going." Lauren Brown testified that Brown nodded his head, indicating his understanding of what she told him.

In all practical respects, based on this evidence, a juror reasonably could find that at the time Brown spoke with the police on November 1, he was no longer employed by Blockbuster or acting on Blockbuster's behalf. The record contains sufficient evidence from which a juror reasonably could find that by the time the police interviewed Brown regarding the October incidents, Brown's employment with Blockbuster had been terminated and that Brown was no longer authorized to act on Blockbuster's behalf. While we acknowledge that evidence was also presented from which a juror reasonably might

conclude otherwise, and find that Brown was still an employee of Blockbuster at the time he was interviewed by the police, that possibility, or even probability, does not justify removing this factual determination from the jury. The particular facts of the case before us compel us to conclude that reasonable minds could differ as to whether Brown was an employee of Blockbuster acting in the scope and course of employment during the November 1 police interviews. Thus, Brown's employment is a factual issue to be decided by the jury.

Given the standard of review applicable to this case and the record before us, we do not find, as a matter of law, that Brown was employed by Blockbuster at the time he spoke with the detectives on November 1, 2004, and acting within the course and scope of his employment. We note that our review is limited to determining the sufficiency of the evidence adduced at trial in light of the trial court's grant of the motion for partial directed verdict. Following our decision in *BMK Corp.*, we cannot say that the evidence presented at trial "establishes beyond all doubt the truth of facts which as a matter of law" entitled Gibbs to the relief sought. 226 S.W.3d at 193. Because the record before us presents sufficient contradictory evidence regarding Brown's employment status with Blockbuster, a jury must render a factual determination here. The trial court erred in taking this issue from the jury and deciding, as a matter of law, the issue of Brown's employment status.

 In applying the rather severe standard of review announced in *Coleman* and reaffirmed in *Brandt*, we recognize that the Supreme Court has enumerated two distinct situations in which a verdict may be directed against the party not

having the burden of proof. Our review of the facts leads this Court to find that neither of these exceptions is applicable to this case. As noted in *Coleman*, a verdict may be directed against the party not having the burden of proof where: (1) the party not having the burden of proof "admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests," or (2) the "proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned." 160 S.W.2d at 693. Clearly, this case does not fall into the second, "undisputed documentary proof," category of the *Coleman* rule because the evidence presented on the issue of Brown's employment was not "altogether of a documentary nature." Extensive testimonial evidence was presented on the issue of whether Brown was an employee of Blockbuster at the time he spoke with the police on November 1, 2004.

The first exception stated in *Coleman* presents a greater challenge. The record shows that the evidence of Brown's employment with Blockbuster, upon which Gibbs relies to support his motion for partial directed verdict, comes from the testimony of Lauren, who testified as an agent of Blockbuster. While it is possible to argue that Lauren's testimony regarding her suspension of Brown on November 1 established the truth of the basic facts upon which Gibbs's claim regarding Brown's employment rested, we find this argument unpersuasive following our review of the entire record.[11] Though Lauren's testimony provided evidence that Gibbs could have used to argue that Brown remained an employee of Blockbuster

---

**11.** While Gibbs could make this argument, he did not. Neither Blockbuster nor Gibbs addressed our standard of review when review-

ing a case in which the trial court grants a directed verdict *in favor of the party having the burden of proof.*

when he was interviewed by the police on November 1, her testimony was internally conflicting on the issue of Brown's employment status. Lauren testified that she "suspended" Brown and did not "officially" terminate his employment until his final paycheck was received. However, Lauren also testified that she made it clear to Brown *before* he was interviewed by the police that he would not work at Blockbuster again, took Brown's store keys, and told Brown to gather his personal belongings. In addition, McBride testified at trial that he told Brown that he was not to return to the Blockbuster store or risk being arrested for trespassing, to clock out when the police arrived, to take his personal property, and that "You can kind of figure out what's going to happen." McBride also testified that he took Brown's keys to the store. In light of this testimony, a jury reasonably could conclude that Brown was no longer employed by Blockbuster when he clocked out and left the store without a store key on November 1, 2004. Given McBride's testimony, along with the internal conflicts in Lauren's own testimony, we are not persuaded that Blockbuster "admits either in [its] pleadings or by counsel in open court or in [its] individual testimony on the trial the truth of the basic facts upon which the claim of [Gibbs] rests." While evidence was presented by Blockbuster that could assist Gibbs in proving this issue, the testimony of Lauren and McBride did not constitute an admission by Blockbuster that Brown was employed by Blockbuster and acting on its behalf when he spoke with the police on November 1, 2004.

The evidence regarding Brown's employment with Blockbuster was sufficiently contradictory to require the submission of this issue to the jury for a factual determination. We therefore find the trial court erred in taking this issue away from the jury and in granting Gibbs's motion for partial directed verdict on the issue of Brown's employment with Blockbuster.

**B. McBride's Employment by Blockbuster**

█ As an alternative to arguing the trial court correctly granted the motion for partial directed verdict regarding Brown's employment status with Blockbuster, Gibbs posits that the trial court's ruling nevertheless is not determinative of this appeal because Blockbuster admits that McBride is an employee of Blockbuster. Gibbs notes that under the instructions submitted, the jury was required to find only that either McBride *or* Brown instigated Gibbs's arrest.[12] Gibbs claims that a reasonable juror could have found from the evidence that Blockbuster was liable for instigating his arrest because of McBride's actions alone. Therefore, Gibbs argues that, even if the trial court erred in granting the motion for partial directed verdict on Brown's employment status, the trial court's ruling was not prejudicial to Blockbuster. Because the disjunctive nature of the verdict directing instruction prevents this court from knowing the basis of the jury's verdict, we decline to find the trial court's error was not prejudicial.

█ Gibbs correctly states that under the verdict director instruction given to the jury Blockbuster's liability for his alleged false imprisonment possibly could be based upon actions that McBride took to instigate Gibbs's confinement. As stated earlier, false imprisonment requires proof of "confinement, without legal justification, by the wrongdoer of the person wronged."

12. Jury Instruction No. 6 read: "Your verdict must be for [Gibbs] if you believe: [Blockbuster], through [Brown] and/or [McBride] intentionally instigated the restraint of [Gibbs] against his will."

*Highfill,* 186 S.W.3d at 280. We acknowledge that a "person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest." *Highfill,* 186 S.W.3d at 280. Thus, Gibbs is correct in noting that if there is sufficient evidence from which a jury could conclude that McBride "instigated" his confinement by providing information to the police "on the basis of which a subsequent unlawful arrest is made," Blockbuster can be held liable for Gibbs's false imprisonment.[13] *Id.* However, while it is possible that the jury may have found Blockbuster liable based on McBride's actions, the evidence supports an equally plausible argument that the jury verdict was premised solely on the conduct of Brown, and not upon any conduct of McBride.

Because the record does not reveal the basis of the jury's verdict, we are unable to conclude that the jury found Blockbuster liable to Gibbs for false imprisonment because McBride instigated the confinement of Gibbs. The jury could just as easily have based its verdict solely on Brown's actions. Given the inability to know the basis of the jury's decision, we cannot find the trial court's error was not prejudicial. *See Braboy v. Fed. Express Corp.,* 238 S.W.3d 690, 696 (Mo.App. E.D.2007) (noting, "[a] court does not possess the insight of the Master Clocksmith that would enable a court to peer into the works of the jury's collective mind and say which

wheels were turning when the verdict was struck." (internal citations and quotations omitted)).

We further note that evidence was adduced at trial from which a juror reasonably could conclude that McBride did *not* instigate Gibbs's arrest. McBride testified that he merely reported to the police that Brown had information on the robbery. McBride testified that he did not know what Brown told the police. The record reveals that McBride testified at trial that he specifically told the detectives, "[Brown], who reported that he was robbed on October 9, has now changed his story. He is saying that him and an ex-employee by the name of William Gibbs were working together to fake a robbery and take the money." McBride also testified that he told the officers that Brown told him that "[Brown and Gibbs] worked together to get the money." Given this evidence, a jury could reasonably conclude that McBride did not instigate Gibbs's arrest for robbery, and that Gibbs's arrest for armed robbery was the sole result of Brown's actions and statements to the police. Because a reasonable jury could have based its verdict on Brown's conduct alone, Gibbs's argument that Brown's employment status was irrelevant, and the trial court's ruling on that issue was not prejudicial, is unpersuasive.

Blockbuster's fourth point on appeal is granted.[14]

---

**13.** In addition to proving McBride, and/or Brown, instigated his detention against his will, Gibbs must also prove the second element of false imprisonment, i.e. the unlawfulness of his detention or restraint. *Blue,* 170 S.W.3d at 472. Issues regarding the lawfulness of Gibbs's arrest and confinement were argued extensively on appeal. Blockbuster's second point on appeal alleges the trial court erred in not allowing Blockbuster to introduce evidence demonstrating the legality of Gibbs's arrest because illegality of the arrest was an essential element of Gibbs's claim.

We do not address this issue on appeal, however, as Blockbuster's fourth point is dispositive and requires reversal of the trial court's judgment. We do note, however, that "the unlawfulness of such detention or restraint" is clearly an element of false imprisonment and must be demonstrated to prevail on such a claim. *Id.* "A suit for false arrest or false imprisonment is the proper action where the aggrieved person is arrested without legal process." *Rankin,* 93 S.W.3d at 819.

**14.** We note that Blockbuster also argues that even if Brown was an employee of Blockbus-

Although we find Gibbs made a submissible case on both his claim for false imprisonment and his claim for punitive damages, the trial court's error in removing the issue of Brown's employment status from the jury requires us to reverse the trial court's judgment and remand to the trial court for a new trial.[15]

### Conclusion

The judgment of the trial court is reversed and the case is remanded with instructions in accordance with this opinion.

LAWRENCE E. MOONEY and GEORGE W. DRAPER III, JJ., Concur.

ter on November 1, he was no longer acting within the scope and course of his employment at the time he spoke with the detectives. We do not address this issue because sufficient evidence exists to dispute Brown's employment status with Blockbuster at the time he met with police on November 1.

15. Because the general submission made in the verdict director prevents us from knowing the basis of the jury's verdict, we are compelled to remand for a new trial on all issues, and not direct a limited remand on only the issue of Brown's employment.